STATE EX REL. JAMES A. HANLON, HERBERT G. BARTH AND GEORGE LOELKES, RELATORS, v. CITY OF MAPLEWOOD, JOHN D. FELS, MAYOR, AND OSCAR R. HEGSTROM, JOSEPH E. KAVANAUGH AND HARRY MCCLURE, COUNCILMEN AS MEMBERS OF THE COUNCIL OF SAID CITY, RESPONDENTS.—99 S. W. (2d) 138.

St. Louis Court of Appeals.   Opinion filed December 8, 1936.

Motion for rehearing overruled Dec. 23, 1936.

740

*Alroy S. Phillips* and *Michael J. Mulvoy* for appellants.

742

*Charles E. Altenbernd* and *Brackman & Versen* for respondents.

McCULLEN, J.—This is an original proceeding in mandamus brought by relators, who are citizens and residents of the City of Maplewood in St. Louis County, Missouri, against respondents who constitute the city council of said city. Our alternative writ having been issued, respondents, in due time, filed their return. Relators filed a demurrer on the ground that respondents' return fails to state facts sufficient to constitute good cause why our peremptory writ should not be granted. The case is, therefore, before us solely on the pleadings.

From the admitted facts, it appears that the respondent City of Maplewood is a municipal corporation of the County of St. Louis, Missouri, being a city of the third class and having a population of twelve thousand and less than twenty thousand. On March 6, 1917, at a general election held for that purpose the citizens of said city adopted the alternative form of government as provided for in Section 6906 to and including Section 6929, Revised Statutes Missouri 1929 (Mo. Stat. Anno., pages 5681 to 5699, inc.). No civil service commissioners have ever been appointed by the council of said city. Respondent Fels has been and is the mayor of said city, and respondents Hegstrom, Kavanaugh and McClure have been and are the councilmen thereof, said mayor and councilmen together constituting the council of said city under Section 6911, Revised Statutes Missouri 1929 (Mo. Stat. Anno., p. 5686).

The respondent city, by virtue of an ordinance duly passed, maintains a fire department with a chief and three full time firemen. These positions of firemen were held by relators from April 12, 1933, to April 30, 1935, on which last named date respondents discharged relators and in their places appointed three other persons without requiring said persons to pass civil service examinations. Since that time respondents have permitted such other persons to hold the positions without any such examinations.

On August 28, 1935, relators applied to respondents for ap-

pointment to said positions and requested respondents to hold civil service examinations for said positions as provided for in Section 6919, Revised Statutes Missouri 1929, but respondents refused to hold such examinations, giving as their reason therefor that the provisions of Section 6919, Revised Statutes Missouri 1929, are not mandatory and binding upon them, but that said section leaves it to their discretion as to whether or not said section should be enforced in said city. It is further charged by relators and admitted by respondents that said city has never had any civil service rules, regulations or examinations and that the respondents mayor and councilmen have not taken the oath provided for in Section 6919(a), Revised Statutes Missouri 1929, and that they have not done any other act toward adopting and enforcing the civil service provisions of said statute.

It is the contention of relators that the enforcement of the civil service provisions of Section 6919, Revised Statutes Missouri 1929, does not rest in the discretion of respondents; that, on the contrary, it is the duty of respondents under said statute to act as civil service commissioners for the city and to adopt rules and regulations for civil service examinations and appointments and that such duties are mandatory.

Respondents contend that the provisions of the statute mentioned are not mandatory; that under said statute the matter of adopting civil service regulations in third class cities operating under the alternative form of government, which have a population of less than twenty thousand, is left entirely to the discretion of the council; that since respondents have never adopted civil service rules and regulations, this court has no authority to compel them to accept the application of relators for employment or to provide for civil service examinations for positions on the fire department.

There is no doubt that mandamus is the proper remedy to compel the performance of the duties set forth in the statute with respect to the carrying out and enforcement of the civil service provisions thereof, if we find that such provisions are mandatory. Relators are obviously correct in asserting that in a proper case the writ should not be withheld or denied, but we are unable to agree with their view that the issuance of our peremptory writ is mandatory in this case. What constitutes a proper case must, of course, be determined by the court which is asked to issue the writ. While there have been various expressions by the courts of this State relating to the duty of a court in connection with applications for the writ of mandamus with respect to whether the issuance thereof is mandatory or discretionary, we think it is no longer a debatable question. Our Supreme Court has definitely

and unequivocally held that mandamus not being a writ of right is issued in the court's sound discretion. State ex rel. Cranfill v. Smith, 330 Mo. 252, 48 S. W. (2d) 891. It has also been held explicitly that mandamus is a discretionary writ and not a writ of right. [Perkins v. Burks, 336 Mo. Sup. 248, 78 S. W. (2d) 845.] It has further been held by our Supreme Court that to be entitled to the writ of mandamus, the relator must show a clear legal right to the relief prayed for. [State ex rel. R. Newton McDowell, Inc. v. Smith, 334 Mo. Sup. 653, 67 S. W. (2d) 50. In a very late case our Supreme Court has held that mandamus issues only in case of necessity to prevent injustice or great injury, and if there is doubt of its necessity or propriety, the writ should not be issued. [State ex rel. Kansas City Bridge Co. v. Missouri Workmen's Compensation Commission (Mo. Sup.), 92 S. W. (2d) 624. See, also, State ex rel. v. Jackson County Medical Soc., 295 Mo. Sup. 144, 243 S. W. 341; State ex rel. v. Caster, 321 Mo. Sup. 863, 12 S. W. (2d) 462; State ex rel. v. Baird, 217 Mo. App. 362, 278 S. W. 416.]

In the case at bar, the determination of the question as to whether relators are entitled to the issuance of our peremptory or permanent writ is dependent upon the proper construction of the statute involved.

The provisions of the sections of the statute in question, insofar as we are concerned with them in this case, are as follows:

"Section 6919. In cities having a population of twenty thousand and less than thirty thousand the council *Shall*, and in cities having a population of ten thousand and less than twenty thousand the council *May* immediately after organizing, by ordinance appoint two civil service commissioners, . . .: Provided, however, that in all cases in which no civil service commissioners are appointed by the council the council *shall* have the same powers and duties devolving upon such commissioners as provided for in this article.

. . . . . . . .

"(f) The provisions of this section *shall* apply to all appointive officers and employees of *such city* except those specially named in section 6913, . . .: Provided, however, that existing employees heretofore appointed or employed and who are performing their duties in a satisfactory manner may retain their positions without further examination, subject, however, to the approval of the council.

"Section 6920. All officers and employes in any *such city shall* be elected or appointed with reference to their qualifications and fitness and for the good of the public service, and without reference to their political faith or party affiliations. . . . (Emphasis ours).

Relators argue that whatever may be the construction of the above sections of the statute with respect to smaller cities, it is plain that the words "such city" include cities having a population of ten thousand and less than twenty thousand, to which class respondent city belongs. It is their contention that the option given to cities of the class to which respondent city belongs relates only to their choice of appointing civil service commissioners or of having their council act as such commissioners, but that such option does not refer to the enforcement of the civil service provisions of the law itself. They insist that in view of the Legislature's use of the word "shall" in Sections 6919, 6919(f) and 6920, Revised Statutes Missouri 1929, which we have emphasized above in setting forth the statute, the statute must be construed as mandatory unless a contrary purpose appears and that in this statute no contrary purpose does appear.

Relators further contend that the mandatory nature of Section 6919 also appears in the phrase therein "Provided, however, that in all cases in which no civil service commissioners are appointed by the council, the council shall have the same powers and duties devolving upon such commissioners as provided for in this article." In support of this view, they refer to the language of Section 1 of Article 2 of the Constitution of the·United States wherein it is provided that in case of the removal of the President from office, or of his death, resignation or inability to discharge the "powers and duties of said office, *the same*·*shall devolve on the Vice President.*" They also cite Section 16 of Article 5 of the Constitution of Missouri, which provides that in case of the death, conviction, impeachment, failure to qualify, resignation, absence from the State or other disability of the Governor, "the powers, duties and emoluments of the office . . . *shall devolve upon the Lieutenant Governor* . . ."

Relators cite cases holding that the constitutional phrases, which we have emphasized above, mean that on the disability, etc., of the chief executive, it is mandatory that his powers and duties vest in and are mandatory on his successor. From this basis they argue that the words of the statute involved in the case at bar mean that on the failure to appoint civil service commissioners in a city the size of respondent city, it is mandatory that their powers and duties vest in and are mandatory on the council. We are unable to agree with the view of relators in this respect. We do not believe that the situation covered by the constitutional provisions referred to, dealing as they do with the chief executive of the nation and of the State, are comparable to the situation dealt with in the statute involved herein. Under the constitutional provisions there can be no escape from the view that it was the clear and unqualified intention of the lawmakers to provide for the

*performance,* by some other officer, of the duties of the chief executive in the absence, death or disability of that officer. In the very nature of the situation covered by such constitutional provisions, it is apparent that discretion or choice on the part of the substituted or successor officer has no place. It is clear that such provisions are necessarily mandatory. The duties of such offices must be performed by some one in the absence, death or disability, etc., of the chief executive if the operations of the government are to go on.

We have no such situation to deal with in the case at bar under the statute involved. It is true, as relators contend, that the word "shall" has frequently been held to mean "must" but it has also frequently been held to mean "may."

The construction to be put upon the word "shall" depends upon the intention which prompted the Legislature to use such word, as evidenced by the language of the entire statute and the purposes sought to be accomplished thereby.

In State ex inf. v. Talty, 166 Mo. Sup. 529, 66 S. W. 361, our Supreme Court was called upon to determine the meaning of the words "shall exhibit" in the statute relating to proceedings in *quo warranto.* The statute, then Section 4457, Revised Statutes Missouri 1899, provided that where any person had usurped or was unlawfully holding an office, the attorney general or the circuit or prosecuting attorney of the district or county, as the case might be, "shall exhibit" to the court "an information in the nature of a *quo warranto,*" etc. It was contended in that case that the words "shall exhibit" were mandatory and that the officers named had no choice or discretion as to whether or not they would exhibit an information in the nature of a *quo warranto* when applied for, but that the duty of doing so was imperative and mandatory. In passing upon this question, the Supreme Court said:

"It is argued by defendants that the statute is mandatory, in that the words 'shall exhibit,' as therein used, 'means that the act itself must be done,' and that the circuit attorney had no discretion with respect to the matter but was bound to exhibit the writ when requested to do so by Buechner. That the word 'shall,' as generally used, is mandatory may be conceded, but, it is a cardinal rule that 'the intention of an act will prevail over the literal sense of its terms' (Sutherland on Statutory Construction, sec. 219), otherwise it might lead to absurd consequences, which could but be the result in this case if the statute be construed according to its strict letter." [State ex inf. v. Talty, supra, l. c. 559, 560.]

That the word "shall," as used in a statute, is not necessarily a mandatory word is clearly shown by the language of our Supreme Court in the case of State ex rel. Carpenter v. City of St. Louis, 318

Mo. Sup. 870, 2 S. W. (2d) 713, where, in an opinion by the court in banc, it was said: ·

"But respondents call attention to the language of section 7191, that 'such mayor and common council *shall* direct the proper officer to give notice' so as to submit the matter to a vote, specifying the rate mentioned in the petition. The word 'shall,' when used in a statute, is often construed to mean 'may.' It is imperative where the public or persons have rights which ought to be exercised or enforced; but, where no right or benefit depends upon its imperative use, it may be held directory only. [2 Lewis-Sutherland on Statutory Construction, sec. 640.] The word is held to be permissive and not mandatory when necessary to sustain or accomplish the purpose of a legislative act. [People v. Fox, 144 App. Div. 611, 129 N. Y. S. loc. cit. 651.] 'Shall' is also construed in the permissive sense to mean 'may' where it is necessary to sustain the constitutionality of a statute." [State ex rel. Carpenter v. City of St. Louis, 318 Mo. Sup. 1. c. 907, 2 S. W. (2d) 1. c. 727.]

The general rule with respect to the use of permissive words in a statute is stated in 59 C. J., Section 633, pages 1077 and 1078, as follows:

"On the other hand, where statutes are purely enabling in character, simply making that legal and possible which otherwise there would be no authority to do, and no public interests in private rights are involved, they will be construed as permissive. Generally, statutes, directing the mode of proceeding by public officers, designed to promote method, system, uniformity, and dispatch in such proceeding, will be regarded as directory if a disregard thereof will not injure the rights of parties, and the statute does not declare what result shall follow noncompliance therewith. . . .

"Permissive words in a statute in respect of officers or courts will not be construed as mandatory where such construction would create a new public obligation; and it has been held that even mandatory words or provisions in a statute defining the duties of administrative officers may be construed as directory only, unless something in the body of the statute indicates the contrary."

Our Supreme Court in State ex rel. Ellis v. Brown, 326 Mo. Sup. 627, 633, 33 S. W. (2d) 104, 107, stated the rule for determining whether a statute is directory or mandatory in the following broad terms:

"There is no universal rule by which directory provisions in a statute may, in all circumstances, be distinguished from those which are mandatory. In the determination of this question, as of every other question of statutory construction, the prime object is to ascertain the legislative intention as disclosed by all the terms and provisions of the act in relation to the subject of legislation and the general object intended to be accomplished."

Having in mind these various aids to construction, it seems apparent that it was not the intention of the Legislature to make it mandatory upon the officers of a city having a population of ten thousand and less than twenty thousand, such as respondent city herein, to carry out and enforce, regardless of their own judgment and choice in the matter, the civil service provisions of the statute. It is evident, from the use the Legislature has made of the two words "shall" and "may" in dealing with the cities mentioned in the statute, that it was intended to make a distinction between cities having different populations. The very fact that in providing for cities of twenty thousand and less than thirty thousand population the word "shall" was used, whereas with respect to cities having a population of ten thousand and less than twenty thousand the word "may" appears, demonstrates, in our opinion, that the first was intended to be mandatory but that the second was intended to be only permissive or discretionary.

From the language used by the Legislature, it appears that it was the intention to make mandatory the appointment of two civil service commissioners and to make mandatory the carrying out and enforcement of the civil service provisions of the statute in cities having a population of twenty thousand and less than thirty thousand. As to cities having a population of ten thousand and less than twenty thousand, such as respondent, it is evident that it was the intention to leave to the discretion of the council of said cities the matter of determining whether or not the civil service provisions should be enforced, and in the event they should exercise their discretion in favor of enforcing such provisions, then the "powers and duties" given to and required of the civil service commissioners referred to in the first named cities should devolve upon the council in the second named cities.

This construction of the statute seems reasonable from every viewpoint in the light of the language of the statute. It credits the Legislature with an intention to avoid forcing the civil service system upon small cities where, as a practical matter, it might not be considered desirable, but gives to such cities, through action by their council made up of their highest administrative officers, the mayor and councilmen, the right, in the exercise of their discretion, to adopt and to have the civil service system of appointments to public office. It will be noted that the statute does not say that the council "shall perform" or "shall exercise" the duties devolving upon civil service commissioners, but merely says that the council "shall have the same powers and duties devolving upon such commissioners." As used in this statute, we believe this is not mandatory language but is intended merely to enable councils in the second named cities to have the same powers and duties as civil service

commissioners have in the event such councils exercise their discretion in favor of having the civil service system. If the Legislature intended to make it mandatory upon cities of the size of respondent city to enforce the civil service provisions, it would have been a very simple matter to have refrained from the use of the word "may" and to let the word "shall" apply to such cities just as it refers to cities of twenty thousand and less than thirty thousand, or to have said such councils "shall perform" or "shall exercise" the powers and duties mentioned.

The view that the provisions of the statute in question are not mandatory with respect to cities of the size of respondent city appears all the more sound when we look at the provisions of Section 6912 and compare them with the provisions of Section 6919 which we are considering. Both sections are in the same article. In Section 6912 we find that the Legislature used the following language:

"The council shall have and possess, *and the council and its members shall exercise* all executive, legislative and judicial powers and duties now had, possessed and exercised by the mayor, city council . . . and shall also *possess and exercise* all executive, legislative and judicial powers and duties now had and exercised by the board of police and fire commissioners . . ." (Emphasis ous.)

The language used in Section 6912, when compared with the language used in Section 6919, both sections being in the same article, shows that the Legislature itself made a clear distinction between the mere conferring of "powers and duties" and the requirement of the "exercise" thereof. In Section 6919 nothing is said about the council "exercising" the powers of civil service commissioners, whereas, in Section 6912 the legislative declaration is that the council not only shall possess but that it shall "exercise" all executive, legislative and judicial powers and duties, etc.

The statute in question has been in force for a period of more than twenty-three years, and relators do not cite, nor have we been able to find, any authority in this State holding that the mayor and councilmen of cities of the size of respondent city are required as an absolute and imperative duty to adopt and enforce the civil service provisions thereof in such cities, nor do relators refer to any such city wherein such provisions have been or are now enforced. This indicates that the administrative officers of all cities of the size of respondent city in this State have themselves, as have respondents in this case, construed said statute to mean that the Legislature has merely conferred power on them to adopt and enforce, in the exercise of their discretion, the civil service provisions thereof, and in the event they exercise their discretion in favor of the adoption and enforcement of such provisions, they themselves shall have

the powers and perform the duties of civil service commissioners under the provisions of the statute.

This construction of the statute by respondents appears to be reasonable in view of the language of the statute itself, and is entitled to great weight because it is the construction of those who, under all the provisions of the article prescribing the duties of officers of such cities, are charged with the responsibilty of the government thereof. [State ex rel. Gass v. Gordon, 266 Mo. Sup. 394, 412, 181 S. W. 1016, 1021.]

Looking at the entire subject-matter covered by the various sections of the statute, and believing that courts should proceed wih the utmost caution where they are called upon to interfere with administrative officers and should do so only upon a clear showing that the law requires such interference, we hold that the provisions of the statute with respect to the civil service provisions thereof in cities of the size of respondent city are merely directory or discretionary. It follows that our alternative writ must be quashed, and it is so ordered. *Hostetter, P. J.,* and *Becker, J.,* concur.