STATE of Missouri ex rel. ST. LOUIS PUB-LIC SERVICE COMPANY, a Corporation, Relator,

v.

David A. McMULLAN, Presiding Judge of the Circuit Court of the City of St. Louis, Missouri, Respondent.

STATE of Missouri ex rel. Edward V. EICKMANN, Relator,

v.

David A. McMULLAN, Presiding Judge of the Circuit Court of the City of St. Louis, Missouri, Respondent.

Nos. 45502, 45503.

Supreme Court of Missouri.

En Banc.

Dec. 10, 1956.

Rehearing Denied in No. 45503 Jan. 14, 1957.

L. F. Stephens, St. Louis, for relator St. Louis Public Service Co.

Sherman Landau, St. Louis, for relator Eickmann.

Hullverson & Richardson, St. Louis, for respondent.

EAGER, Judge.

Each of these causes is an original proceeding in mandamus, in which a writ of prohibition is prayed in the alternative. Since the cases involve the same question of law, they were consolidated. In the first case a return to the alternative writ was filed; in the second an answer was filed, the issuance of the alternative writ being waived. It will not be necessary to review the pleadings specifically; the facts and the issues are such that the determination here becomes one of law. The facts in each case will be stated briefly.

In the first case it appears that Gay Landau, a married woman, was involved in a collision with a street car while driving a car in the City of St. Louis on June 9, 1950. She filed suit for personal injuries against the St. Louis Public Service Company on March 16, 1951, in the Circuit Court of the City of St. Louis; she was given a physical examination on August 28, 1951, by Dr. Olney Ambrose (who thereafter died), and another on May 28, 1952, by Dr. E. C. Holscher; it is alleged, and not denied, that these physicians were selected by the defendant, but it does not appear whether or not the examinations where ordered pursuant to motion. Perhaps this is immaterial. The subsequent history of that case is shown in the opinion of this court en banc appearing in Landau v. St. Louis Public Service Co., 364 Mo. 1134, 273 S.W.2d 255, 48 A.L.R. 2d 1200. For the sake of brevity, we shall say that it was compromised and settled. On January 4, 1955, Sherman Landau, the husband of Gay Landau, filed suit against that defendant for his expenses, and for his loss of "services, society and companionship," past and future, arising out of her injuries in the accident referred to; it was further alleged that her injuries were permanent, and they were specified in considerable detail. The prayer was for $50,000. The answer, after admitting certain formal matters, consisted solely of denials. On March 5, 1956, defendant filed its motion "to Compel a Physical Examination of Plaintiff's Wife Gay D. Landau," setting out verbatim the sundry personal injuries alleged in the husband's petition, stating that no examination had been had in the present suit, and specifically praying that Mrs. Landau be examined by Dr. E. C. Funsch at a time convenient to her and the doctor. The case had been set for trial on March 12, 1956. The court denied this motion upon the specific ground that it was "without authority to enter the order compelling Gay D. Landau, wife of plaintiff, to submit to medical examination" or to compel plaintiff to require her to do so. From that order arises the first of the present proceedings.

In the second case the process is reversed, and the proceeding in this court was instituted by the plaintiff, as relator. Maybelle Eickmann filed suit against St. Louis Public Service Company in the Circuit Court of the City of St. Louis on January 12, 1951, alleging that she had suffered personal injuries on November 7, 1950, in a collision between two of the defendant's buses, and resulting from its negligence. She was a passenger on one of the buses. She was examined on March 19, 1951, by Dr. Richard A. Sutter, pursuant to court order entered on motion of the defendant; it is stated here that she was examined again by Dr. Sutter on May 4, 1951. The trial of her case resulted in a verdict and judgment for the defendant. On June 22, 1955, Edward V. Eickmann, husband of Maybelle Eickmann, filed suit in the same court against the St. Louis Public Service Company for his damages arising out of

the same injuries, again alleged to be due to defendant's negligence. Therein he prayed the sum of $27,500 for his expenses, and for past and future loss of his wife's "services, society and companionship"; he also alleged very specifically sundry injuries, all of which were stated to be continuing and permanent. The answer, except for formal admissions, consisted of denials. On the morning of the trial setting, December 12, 1955, defendant filed its motion to compel a physical examination of Maybelle Eickmann, setting out in detail the personal injuries alleged, and further stating that there had been a physical examination in May, 1951, but none in the husband's suit, that Mrs. Eickmann had, since the former trial, been attended by a new doctor, that plaintiff had apparently secured the services of other doctors to assist in the presentation of his case, and that defendant needed help to "offset such a formidable array of medical talent." In that motion defendant specifically asked that the court order plaintiff to have his wife report to Dr. E. C. Funsch for examination, at a time convenient to her and the doctor. The case was then withheld from assignment, and on December 13, 1955, the court entered an order sustaining the motion, appointing Dr. Funsch to examine Mrs. Eickmann, and ordering her to report to him for examination, with the privilege of having her own physician present. Thereupon, it is alleged, Mrs. Eickmann refused to submit to the examination as ordered, and it is further alleged that relator, her husband, "has no legal control, or right of control" of such nature as to compel her, against her will, to submit. On January 6, 1956, the defendant filed its motion in the Circuit Court, reciting the failure and stated refusal of Mrs. Eickmann to report for examination, and asking that the cause be removed from the trial calendar, that the petition be stricken, and that the cause be dismissed with prejudice. On February 13, 1956, the respondent entered an order reciting various facts, including the fact that the petition of the husband "con-

tains allegations of an injury not asserted in the petition" of the wife, to wit, "activation and aggravation of arthritis in the spine and extremities," and that it appeared that the previous order of Judge Regan "was an exercise of the court's inherent power to require the injured *person* to submit to a physical examination in furtherance of justice." It was further stated in the order that the naming of Dr. Funsch in defendant's motion would be construed as a suggestion to the court, directed at its discretion; concluding, the court ordered that the cause be removed from the trial docket until the order for the examination was complied with, and a ruling was reserved on the request for a dismissal. The plaintiff in that case, as relator here, thereupon instituted the second of these proceedings, asking that respondent be required to vacate the order of February 13, 1956, and to reinstate the cause on the trial docket, or that he be prohibited from excluding the cause from the trial docket and from dismissing it.

In the first of these proceedings the relator insists that the respondent judge failed and refused to exercise the jurisdiction and power vested in him by law, in holding that he was "without authority" to require a physical examination of the wife, and in failing to exercise his discretion in the matter. In the second, the relator insists that the respondent acted in excess and abuse of his jurisdiction and authority in removing relator's case from the trial docket and in denying him a trial on the merits because of the refusal of his wife to submit to the examination previously ordered.

▉ This court has the power to issue original writs of mandamus and of prohibition. Art. 5, § 4, V.A.M.S.Const. of Mo.; chapters 529 and 530, RSMo 1949, V.A.M.S.; and one primary purpose of such proceedings here is to enable this court to exercise effectively its "general superintending control" over inferior courts. Some objection is made here to the pro-

priety of these proceedings in mandamus; respondent in the first case says that the relator there has a suitable remedy by trial of the pending case, to be followed, if necessary, by an appeal, and that the present proceedings merely result in a further postponement. In the second case respondent complains, more or less, of the "intermingling" of the remedies of mandamus and prohibition; we note, however, that the petition there is in the alternative, and that counsel for the objecting respondent is guilty in the first case of the same offense of which he complains in the second. While that practice may not be the most acceptable procedure, we rule here that the form of the petition here is not fatal. The relator in the second case certainly has no remedy by an appeal to determine whether he is entitled to a trial without the medical examination. There are no substantive issues of fact here in either case; the ultimate question is one of law. The issuance of such writs is largely discretionary with the court in each particular case. State ex rel. Cranfill v. Smith, Banc, 330 Mo. 252, 48 S.W.2d 891, 81 A.L.R. 1066; State ex rel. Lovell v. Tinsley, Mo.App., 236 S.W.2d 24; Perkins v. Burks, 336 Mo. 248, 78 S.W.2d 845; State ex rel. Hanlon v. City of Maplewood, 231 Mo.App. 739, 99 S.W.2d 138. The same substantive question of law is involved in each of these proceedings. We have concluded that it is proper here to consider in both cases whether peremptory writs of mandamus shall issue.

■ There can be no doubt that the Missouri Courts have long recognized, and exercised, the inherent power to require a physical or mental examination of a party to a personal injury suit. Atkinson v. United Railways Co., 286 Mo. 634, 228 S.W. 483; Boggs v. Gosser, Mo.App., 55 S.W.2d 722; Shepard v. Missouri Pacific Railway Co., 85 Mo. 629. This rule was apparently first adopted in the case last cited. There are states which do not recognize this inherent power, but Missouri follows the majority rule. 51 A.L.R. note, p.

184; 108 A.L.R. note, p. 142; 4 A.L.R. 2d note, p. 378. But it is clear that the power so vested in the court is a discretionary power, and not an absolute right in the applicant, and that the physician or physicians so appointed act as officers of the court, and not as agents of either party. See authorities just cited; and see, generally, 25 C.J.S., Damages, § 174; 17 Am. Jur., Discovery, § 53, § 55. These texts elaborate somewhat upon the power and the theory upon which it is based. Essentially, at least in many cases, the evidence procured by such an examination is the best and only evidence by which a party defendant may protect himself against possible imposition and exaggeration, if not actual fraud; and the modern trend is to open the door, if possible, to evidence which will throw light upon the subject under investigation. This power to order an examination is usually placed on "the same ground as the general power to compel a discovery." Atkinson v. United Railways Co., 286 Mo. 634, 228 S.W. 483, loc. cit. 485.

■ In 1943 the legislature enacted § 510.040 RSMo 1949, V.A.M.S., which authorizes the court, upon motion and for good cause, to order a physical or mental examination "of the party" by a physician chosen by the party requesting the examination, and who shall be deemed the witness of the party procuring the examination. The statute fixes various other requirements. This statute differs in essential respects from the rule of inherent power previously recognized in our courts, and we do not think it so all-inclusive as to exclude that inherent power of our courts. Undoubtedly there will always be cases where the court may desire to appoint, and should appoint, independent and disinterested physicians to act as officers of the court. See also, generally, Carr on Missouri Civil Procedure, § 784. Apparently the motions in both of these cases were founded upon the statute, for the motions, as well as the order in the second case, specified definitely a named physician of the

defendant's choice. The scope of this statute is restricted by its use of the word "party"; ordinarily that term means, when applied to judicial proceedings, one who is a party in a legal sense and is bound by the proceedings, or an interested litigant, or a person whose name is designated on the record as plaintiff or defendant. 67 C.J.S., Parties, § 1(2), p. 888. A party to an action is distinguished from a party in interest. (Id.) While possibly the term "party" as used in this statute might be construed to include the respective spouses of the plaintiffs, we think it sounder to regard the wording of the statute as restricted to one who is a party to the action in a legal sense. It is apparent, therefore, that the statute does not govern here.

The remaining questions are: does the inherent power of the court extend to the making of an order, in a husband's suit, for the physical examination of the plaintiff's wife who is herself the injured party? And, if so, what are the means of enforcement of the order? We have determined that the power does so extend, in the court's discretion, and within the limits herein discussed. It is true that the wife's claim for her own injuries, and the husband's claim for expenses and loss of services and society are separate claims. Counsel have labored this point somewhat, but actually, it is unnecessary even to cite authorities. The real point is that the separate claim of the husband arises directly *out of,* and *is based directly on,* the wife's personal injuries. Were it not for those injuries he would have no suit, and upon the extent of those injuries depends, in large measure, the extent of his recovery for a loss of services and society. Counsel for relator in the Eickmann case recognize this when they refer to the loss which the husband suffered "as a result of the injuries and incapacities of his wife * * *." It would be utterly foolish to regard the two claims as wholly unrelated. The husband's suit in both of these cases is based in large part upon an alleged loss of services and society because of continu-

ing and permanent injuries to the wife; under Missouri law the husband is entitled to the wife's services to such an extent that she cannot herself recover for loss of time relating to her domestic duties. Wolfe v. Kansas City, 334 Mo. 796, 68 S.W.2d 821; Elliott v. Chicago, M. & St. P. Ry. Co., Mo., 236 S.W. 17; 41 C.J.S., Husband and Wife, § 401(2) (b), p. 892. And the husband's recovery is purely one for consequential damages arising "in consequence of personal injuries inflicted on the wife * * *." 41 C.J.S., supra, p. 895; see also p. 898, where the terms "on account of personal injuries to his wife," and "as a result of personal injuries inflicted on his wife" are used. In other words, the husband is recovering *consequential damages* for the *very same injury* which the wife has suffered, and for which she also has a right of action. Under these circumstances we certainly regard the wife's physical condition as a matter "immediately or directly in controversy" within the meaning of the opinion in Wadlow v. Humberd, D.C.Mo., 27 F.Supp. 210, cited by counsel.

It seems rather remarkable that no case has been cited which is directly in point; nor has our independent research developed any. Obviously, this situation is due primarily to the fact that the husband-plaintiff and his counsel have usually produced the wife voluntarily for physical examination. We have found the case of Bagwell v. Atlanta Consol. St. Ry. Co., 109 Ga. 611, 34 S.E. 1018, 47 L.R.A. 486, which is perhaps most nearly in point, and which will be discussed shortly. The case of Wadlow v. Humberd, D.C.Mo., 27 F.Supp. 210, is applicable only in so far as it states a principle perhaps applicable, as stated above. The cited case of Beach v. Beach, 72 App.D.C. 318, 114 F.2d 479, 131 A.L.R. 804, is distinguishable. There a wife had filed suit for the support and maintenance of her child and herself; the husband denied paternity and cross-claimed for a divorce; he also requested, and the court ordered, blood tests of the mother and the child for comparison with the blood of

defendant. There the defendant and the court proceeded under Federal Rule 35(a), 28 U.S.C.A., which is very similar to our § 510.040, and which permits an order for the examination of a "party." The court held that the child was in substance a party within the meaning of that rule, since he was a person for whose benefit the action was brought. That reasoning is not applicable here, and the case is distinguishable. The remaining cases cited concern general principles, and they need not be considered individually.

In the case of Bagwell v. Atlanta Consol. St. Ry. Co., 1900, 109 Ga. 611, 34 S.E. 1018, 47 L.R.A. 486, a father sued for loss of the services of his minor daughter, caused by personal injuries. An order was made requiring a physical examination of the daughter, and she, after she had become 21 years of age and apparently because of a personal distaste for the physician named, refused to comply. The court dismissed the case and an appeal was taken from that order of dismissal. The court held that the case should not have been dismissed because of the conduct of one who was not a party and who was not subject to the plaintiff's control. We think that the case is distinguishable on its facts, for certainly a husband, who is claiming the value of a past and future loss of services of his wife, to which he is and will continue to be legally entitled, presumptively has a greater right of control (as a practical matter) over his wife, than has a father over an adult daughter who legally owes him nothing. We are not persuaded by the decision in that case, and the rules and theories of discovery have advanced considerably since the date of that opinion. We have also found, and noted, the case of State v. Wilson, 361 Mo. 78, 233 S.W.2d 686, where the court declined to order an examination of the prosecuting witness in a criminal case. This was ruled largely on grounds of public policy, and because of the fear that such a practice might discourage rightful prosecutions. We do not consider the ruling applicable here.

Every member of the bar realizes the practical necessity of a physical examination of the injured party in a personal injury case, and we deem it unnecessary to elaborate upon the subject. As indicated generally by Wigmore (Evidence, 3rd Ed., Vol. 8, § 2220) to rule otherwise is an invitation to fraud and the concealment of the truth. The doctrine has been extended to contract cases where the physical condition of a claimant is in issue. Myers v. Travelers Ins. Co., 353 Pa. 523, 46 A.2d 224, 163 A.L.R. 919. The liberal policy of Missouri on discovery is shown by our statutes on depositions, interrogatories, the production of papers, objects and documents, the inspection of premises, requests for admission, and by § 510.040, supra. Possibly it was an oversight that the authority to procure an examination under the present circumstances was not included within the purview of the statute.

It has been held that the qualified right to procure, and the power to order, a physical examination is procedural, and that such is not an impairment of substantive rights. Sibbach v. Wilson & Co., Inc., 312 U.S. 1 (modified 312 U.S. 655), 61 S. Ct. 422, 85 L.Ed. 479; Beach v. Beach, 72 App.D.C. 318, 114 F.2d 479, 131 A.L.R. 804. And it is further indicated that, under modern authorities, no constitutional rights are invaded. 25 A.L.R. note, loc. cit. 1417.

We do not decide here whether, on the merits, the defendant in either of these cases was actually entitled to any order for the examination of the injured party; it is not our place to direct how the discretion of the trial court should be exercised. We hold, however, that in each case the court, on proper motion, had the power, in its discretion, to order such an examination. Many things would enter into the exercise of that discretion, as, for instance: how recently and how many times the person had been examined; whether injuries are now claimed by the plaintiff to exist which were not claimed in the prior suit by the wife; the necessity of deter-

mining the permanency of injuries; whether an examination would merely furnish cumulative evidence; and whether the application is timely. Undoubtedly other elements should be considered in some cases.

■ So far as concerns the enforcement of such an order, we may say first that, of course, the court has no means of physically compelling the wife to submit to the examination. Since she is not a party, an order should usually be made, directing the husband-plaintiff to produce her; upon a demonstrated failure to comply, we think the court may stay the proceedings, remove the case from the trial docket, or, in an extreme case, strike the pleadings of the plaintiff or dismiss the cause; conceivably, evidence of the injuries might be excluded at trial, a penalty substantially equivalent to a dismissal. Bailey v. Fisher, 11 La.App. 187, 123 So. 166. In so far as applicable, § 510.060 RSMo 1949, V.A.M.S., may be a guide for enforcement. If a case develops (which we think rather unlikely under ordinary circumstances) where the husband actually cannot persuade his wife to submit to an examination, though such be ordered, then the penalties he suffers may be regarded simply as imposed in the process of a balancing of the interests and the equities of the parties. It seems to us more important that the defendant should not be deprived of this highly material means of discovery (in those cases where examination is found actually to be necessary), than to permit the plaintiff to proceed with the trial of a case where an imposition, if not indeed an "ambush," would almost surely result. We are steering here a somewhat uncharted course, but the decision is in accord with what we firmly believe to be the furtherance of justice. That, after all, is the primary object and purpose of our courts.

The specific difficulty here is that both motions were very apparently filed under § 510.040 requesting an examination by a physician selected by the defendant; we are not impressed by the recital in the order removing case No. 45,503 (our number) from the trial docket that, because "every intendment shall be made in favor of the validity of the court's order," the naming in the motion of a doctor of defendant's choice is construed "as a suggestion to the court"; neither the motion nor the order for the examination sustains such an interpretation. The court should exercise a free and unhampered discretion in naming a disinterested physician. In case No. 45,502, the motion specifically named a physician whom defendant had selected, and it requested only an examination by that doctor. It appears, therefore, that under the circumstances in that case the issuance of a peremptory writ of mandamus is not appropriate; in case No. 45,503 the writ will be issued, but only as hereinafter stated.

In case No. 45,502, State ex rel. St. Louis Public Service Co. v. McMullan, the alternative writ of mandamus requiring respondent to rule and exercise his discretion in ruling upon the merits of defendant's motion is discharged, for the reason that the said motion is not directed to the exercise of the discretion of the court to appoint a disinterested physician or physicians; the order is made, however, without prejudice to the filing and consideration of a proper motion. In case No. 45,503 the issuance of the alternative writ of mandamus was waived and an answer filed; in that case the court appointed the physician of defendant's choice and for the ensuing failure to submit to the examination so ordered, removed the case from the trial docket; because of the form of the motion and of the order of appointment, we conclude that this order was not made in the exercise of the court's discretion to appoint a disinterested physician, but that it was actually made under § 510.040, which we have held to be inapplicable. Under these circumstances we issue our peremptory writ of mandamus directing respondent to reinstate the cause upon the trial docket, but without prejudice to the

filing and consideration of a proper motion for a physical examination of Maybelle Eickmann by one or more disinterested physicians.

Under the circumstances we need not consider the alternative prayers for writs of prohibition. From what we have said the situation should be clear. In case No. 45,502 the alternative writ of mandamus is discharged, as stated; in case No. 45,503 a peremptory writ of mandamus will be issued, as stated. It is so ordered.

All concur.