450 P.2d 684

**STATE of Arizona, Appellee,**

v.

**David L. GOLDSMITH, Appellant.**

No. 1842.

Supreme Court of Arizona.

In Division.

Feb. 20, 1969.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, Former Atty. Gen., Carl Waag, Asst. Atty. Gen., for appellee.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by David L. Haga, Phoenix, for appellant.

McFARLAND, Justice.

The defendant, David L. Goldsmith, hereinafter referred to as defendant, was convicted in the Superior Court of Maricopa County of the offense of child molesting, a felony, and sentenced on the 26th day of July 1967, to serve a term of not less than one nor more than two years in the Arizona State Prison, to commence March 16, 1967, the date he was first arrested. From the judgment and sentence he appeals.

The defendant, in his evidence, shows that he came to live in Arizona in November 1966 and that the family moved into a trailer court located in Tempe during the month of November of that year. During this time, the defendant was employed as a salesman in a furniture store. The trailer in which the family was residing was located across from and near the vicinity of the store. Prior to this change, the defendant's evidence would indicate he had lived a normal life. He had been raised in a religious family environment, had attended Miltonvale Western College, a religious college in Miltonvale, Kansas, where his father was a professor, and had pursued a course of study leading to a degree in theology. He was married to Janet Goldsmith and there was one child born as a result of this marriage, a witness in this case. He was unable to complete his college course because of his marriage.

It was while defendant was working at the furniture store, on or about the 16th day of February, 1967, that the act for which he was convicted was alleged to have occurred. The act of child molesting for which he was tried was fellatio perpetrated upon his child. The defendant testified that his wife brought their child to the store for him to care for during the time that she was gone to a beauty parlor; that during the course of the morning the child indicated it was necessary for her to use the bathroom; that because of the unsanitary condition of the restroom in the furniture store, he sent the child to the bathroom in the trailer house. The defendant also testified that, while he was waiting on a customer, he noticed his daughter outside the trailer with very little clothing on. He stated he stopped what he was doing, picked her up and took her to the trailer and there placed a small suit dress on her.

He denied the act which was testified to by the child.

The child testified in some detail in regard to commission of the act. The mother testified that some ten months before, in Nebraska, she had seen the defendant permitting the child to play with his private parts, although only for an instant, which she had not reported and which she had not thought much of at the time.

The defendant was convicted upon the testimony of the two witnesses, the child and the mother. The child was approximately four and one-half years old at the time the alleged act was committed and five years old at the time she gave her testimony. She was found by the court to be competent to testify.

The only witness for the defense was the defendant himself. He was asked the question on cross-examination:

"Q * * * Have you ever committed an unnatural act of the sort that Linda testified to, with anyone?"

The objection of defendant's attorney was overruled and the answer was permitted, which answer was a denial. Counsel for defendant then moved for a mistrial, which was denied. In a discussion at the bench the county attorney took the position that the defendant's denial of the specific charge "put in issue, the entire area of this Defendant's committing unnatural acts" and

"This man's entire sexual conduct is in issue, the entire area of his sexual conduct is in issue, and I believe I am entitled to inquire into the information, if, in fact, he has a propensity for this type of act, I have a right to show it."

Defense counsel objected to the question but the court overruled the objection. The question was read back and another defense objection overruled. The county attorney then rephrased the question by specifying the particular unnatural act and asking if the defendant had ever performed it with "any male or female." The defendant answered, "No." Another defense motion for a mistrial was denied.

Subsequently the State recalled the defendant's wife to the stand and inquired as to whether, during their marital relations, the defendant had ever required her to perform the particular act, to which she replied in the affirmative. Counsel for the defendant contends that both the asking of the question of defendant on cross-examination and the court's admission of the answer was error. Also that it was error to permit the defendant's wife to testify in regard to her acts of fellatio performed with her husband.

At the conclusion of the trial, the court, after a lengthy discussion with counsel, charged the jury as follows:

"You are further instructed that the rebuttal testimony of Mrs. Janet Goldsmith is presented only for the limited purpose of impeaching testimony given by the Defendant in his own behalf, and that you are to consider Mrs. Goldsmith's testimony for that limited purpose only."

Counsel also contends that the giving of this instruction was error.

■ This Court has consistently held that on cross-examination specific acts of misconduct cannot be shown in the absence of a conviction of that crime. State v. Gallegos, 99 Ariz. 168, 407 P.2d 752; State v. Smith, 96 Ariz. 150, 393 P.2d 251.

"The majority of courts will allow on the cross-examination of the witness, specific acts of misconduct not sustained by a conviction to be shown which affect veracity. 3 Wigmore Evidence 550, § 983 (3d ed. 1940). But this court has allied Arizona with the minority of states by holding that on cross-examination specific acts of misconduct cannot be shown unless the witness has been convicted of that crime. In other words a mere accusation of a felonious crime is not admissible unless there has been a conviction. Arizona v. Peters, 60 Ariz. 102, 131 P.2d 814; Bell v. State, 131 Tex.Cr.R. 571, 101 S.W.2d 558; Commonwealth v. Petrillo, 341 Pa. 209, 19 A.2d 288; People v. Buyle, 22 Cal.App. 2d 143, 70 P.2d 955; Warren v. Hynes,

4 Wash.2d 128, 102 P.2d 691." State v. Harris, 73 Ariz. 138, 238 P.2d 957.

In State v. Johnson, 94 Ariz. 303, 383 P.2d 862, we held that even if there is no objection made to such cross-examination and the witness denies the misconduct, the State may not present proof to impeach him. The Johnson case is particularly applicable here since the county attorney argued at trial that the defendant's general denial of ever having committed the specific misconduct opened the door to the entire area of his sexual conduct.

"The state, however, argues to this court a purported exception found in California whereby the state may be allowed to introduce evidence showing specific acts of misconduct not amounting to felony convictions when the defendant makes broad, all-inclusive statements that he never at any time committed an offense of the kind for which he is on trial. This exception is based on the theory of curative admissibility where the defendant has overemphasized his absolute innocence and the failure to rebut might be damaging to the state's case. [Cases cited.]

"We think, however, that the prejudicial effects of showing specific acts of misconduct which are not sustained by a conviction are such as to greatly outweigh the purported damaging effect to the state's case. The danger is twofold: First, that the jury may conclude that the defendant is a 'bad man' and convict on lesser evidence than might ordinarily be necessary to support a conviction, and second, that if the door is opened to such evidence, the defendant is in danger of having to defend every incident of an entire lifetime in a single trial. We adhere to our prior holdings rejecting the suggested exception.

"This is not a case where the state offered the evidence for the substantive purpose of tending to prove the crime charged. See State v. Akins [94 Ariz. 263] 383 P.2d 180 [June 27, 1963]. The state here recalled the witness Moore in rebuttal and the evidence was solely for the purpose of impeaching defendant's prior testimony. As such it was collateral impeachment and highly prejudicial." State v. Johnson, supra, 94 Ariz. at pp. 305–306, 383 P.2d at p. 863.

In State v. McDaniel, 80 Ariz. 381, 298 P.2d 798, we referred to acts which show "specific sexual inclination." In this case we said:

"In the Arizona case of Taylor v. State, 55 Ariz. 13, 19, 97 P.2d 543, 545, evidence of acts of sexual relations with girls other than the prosecuting witness was held admissible within the exception pertaining to evidence of similar offenses tending to show

'* * * a system, plan or scheme embracing the commission of two or more crimes so related to each other that the proof of one tends to establish the other, * * *.'

"There, evidence of defendant's system of contact, persuasion and accomplishment of his nefarious purposes was held relevant, though it also tended to prove commission of other crimes. See also, State v. Pierce, 59 Ariz. 411, 414, 129 P. 2d 916; State v. Martinez, 67 Ariz. 389, 198 P.2d 115."

We further discussed the admissibility of evidence of "specific emotional propensity," saying:

"There is still another relevancy in the evidence herein adduced. Certain crimes today are recognized as stemming from a specific emotional propensity for sexual aberration. The fact that in the near past one has given way to unnatural proclivities has a direct bearing upon the ultimate issue whether in the case being tried he is guilty of a particular unnatural act of passion. The importance of establishing this fact far outweighs the prejudicial possibility that the jury might convict for general rather than specific criminality. Even granting the general rule of inadmissibility of evidence of independent crimes to prove the offense charged, many courts recognize

a limited exception in the area of sex crimes to prove the nature of the accused's specific emotional propensity. United States v. Kelly, D.C., 119 F.Supp. 217, 221; Bracey v. United States, supra [76 U.S.App.D.C. 23, 142 F.2d 85]. See contra, People v. Westek, supra [31 Cal. 2d 469, 190 P.2d 9]. This propensity tended directly to establish the offense for which the defendant herein was being tried, much as symptoms of a known disease suffered in the past tend to establish the presence of the same today. Of course, this exception would be subject to the limitation of relevant nearness in time, and would not apply to mere criminal tendencies in general as distinguished from specific sexual inclinations." 80 Ariz. at p. 388, 298 P.2d at p. 802.

In the more recent case of State v. Finley, 85 Ariz. 327, 338 P.2d 790, we said:

"The general rule is that proof of the commission of another crime cannot ordinarily be put in evidence as proof of the commission of the crime charged, Vigil v. State, 33 Ariz. 51, 262 P. 14; 22 C.J.S. Criminal Law § 688; but one of the well-recognized exceptions to this general rule is where the evidence of the commission of a similar offense tends to show a system, plan or scheme embracing two or more crimes so related to each other that the proof of one tends to establish the other, then such evidence becomes relevant and admissible.

"There can be no dispute as to the general rule and its exceptions—the real difficulty comes in applying them to the facts of a particular case. In the reported decisions it must be conceded there is a conflict as to just what facts come within the realm of constituting a scheme, plan or design. * * *

* * * * * *

"In several cases involving various types of sex crimes we have sustained the admission of evidence of other offenses as coming within this exception. See Taylor v. State, 55 Ariz. 13, 97 P.2d 543; State v. Martinez, 67 Ariz. 389, 198 P.2d 115; State v. McDaniel, 80 Ariz. 381, 298 P.2d 798.

"Do the facts in the instant case, i.e., the prior rape of another female, bring into play the exception to the rule? For the reasons herein stated we believe that it does. Admittedly the precise problem here presented has not heretofore been passed upon by this court.

"We believe the two occurrences were characterized by the manifestation of the same bent of mind and sinister design or practice on the part of the defendant." 85 Ariz. at pp. 333-334, 338 P.2d at p. 794.

While in both cases we talked about emotional propensity, it was coupled with the rule of law stated in Taylor v. State, supra, which provided that prior acts must tend to show "a system, plan or scheme embracing the commission of two or more crimes so related to each other that the proof of one tends to establish the other." We recognize this principle now. However, any acts to be admissible must tend to establish such "a system, plan or scheme." Also, they would have to be presented at the proper place in the trial. However, they were not introduced for this purpose in the instant case. The question of "a system, plan or scheme" would have to be determined by the trial court at the time it was offered in evidence by the State in its case-in-chief.

The evidence in the instant case was not offered for the purpose of showing "a system, plan or scheme" nor was the defendant given an opportunity to object upon these grounds.

It is not necessary to the disposition of this case to discuss the difference, for admission into evidence, between acts committed by a man and his wife in their marital relations and those inflicted upon a child. See Cotner v. Henry, 394 F.2d 873 (7 Cir., 1968) app. pndg.

This is the type of case that no court likes to review and the first impulse is to recoil from the thought of reversing.

However, the county attorney should not have put the court in this position by offering this type of evidence, and the trial court should not have permitted the county attorney to put it in the position of admitting improper evidence merely because he was probably moved by the sordid nature of the case. The Attorney General, on this appeal, admits that it was not proper rebuttal evidence and also that it was error to have given the instruction. The Attorney General should have gone one step further and confessed that it was reversible error, because no one could say that the wife's testimony as to the marital acts may not have influenced the jury in its verdict. Instead, he argues that it was not prejudicial error. This argument is based on the contention that the testimony of acts of fellatio between the defendant and his wife could have been introduced on the State's case-in-chief to show the defendant's proclivity for this particular type of sexual activity, and as such would have been more damaging than the limited use (impeachment) to which it was put. It is difficult to conceive how it could have been used more prejudicially than to improperly negate the only testimony presented on the behalf of the defendant. This Court, therefore, is compelled to reverse the case for the above reasons.

The trial court gave the defendant a sentence of one to two years in the Arizona State Prison. He served the minimum sentence before being admitted to bond pending this appeal, so, in the instant case, as far as the defendant is concerned, a new trial might prove to be to his disadvantage. However, that is a matter which he and his counsel had to determine.

The other assignments of error probably will not occur in the next trial except we find it necessary to pass upon the contention that the trial court erred in permitting a child of five years of age to testify. This is a question, as we have held, for the determination of the trial court. Keefe v. State, 50 Ariz. 293, 72 P. 2d 425, and such determination will not be disturbed by this Court absent a clear showing of abuse of discretion.

For the above reasons, the judgment is reversed and the cause remanded for a new trial.

UDALL, C. J., and LOCKWOOD, V. C. J., concur.