492 P.2d 406

**Rosalie M. LEWIN, Guardian of the Person of Jules L. Vermeersch, Incompetent, Petitioner,**

v.

**M. Kathryn JACKSON et al., Respondents.**

**No. 10411–PR.**

Supreme Court of Arizona,
In Banc.

Jan. 6, 1972.

Cunningham, Goodson, Tiffany & Weltsch, Ltd. by John F. Goodson, O'Connor, Cavanagh, Anderson, Westover, Kil-

lingsworth & Beshears by Harry J. Cavanagh, Phoenix, for petitioner.

Cavness, DeRose & Senner by Jack Cavness, Phoenix, for respondents.

LOCKWOOD, Justice:

This petition was granted to review orders of the Court of Appeals which denied relief by special action. The plaintiff-petitioner, Rosalie M. Lewin (hereinafter "Lewin"), sued the defendants-respondents for slander and for "interference with advantageous relationships," alleging that she had been disinherited by her wealthy parents as a result of defamations published by the defendants.

Prior to the institution of the action for slander, Lewin had been appointed guardian of the person of her father, Jules L. Vermeersch. Vermeersch, who is now an elderly widower, has suffered heart attacks and strokes during the last several years, and is apparently lucid only part of the time.

As part of the discovery proceedings in the defamation suit, the defendants served upon Lewin (as guardian) a written notice of intent to take the deposition of Vermeersch. Lewin moved for a protective order, pursuant to Ariz.R.Civ.P. 26(c), 16 A.R.S., alleging that a deposition would subject Vermeersch, in his feeble state, to undue burden so severe it could threaten his life. The Superior Court heard arguments on this motion, and then made the following minute entry

"It will be the Order of the Court in this regard that *preliminary to the deposition* of Mr. Jules L. Vermeersch, that Dr. Howard S. Gray, a psychiatrist, and Dr. Fred Coleman, an M.D., being the choice of the defendants, first consult with Dr Duisberg either together with or on separate occasion with Dr. Voldeng. [Duisberg and Voldeng are phy-

sicians who were hired earlier by Lewin.] Also, for the purpose of determining what the opinions, professionally, are of Dr. Voldeng and Dr. Duisberg of the medical and mental status of Mr. Vermeersch.

\* \* \* \* \* \* \*

"IT IS FURTHER ORDERED that Plaintiff's motion for Protective Order is conditionally granted depending upon the outcome of the medical and/or mental examination of the physicians, or other reports to the Court." (Emphasis supplied.)

Lewin thereafter moved for an additional protective order asking that another physician replace Dr. Coleman on the ground that Coleman "had been a doctor who previously worked on Jules L. Vermeersch and whose services [had] been terminated by [Lewin]." Following a hearing which included testimony by Dr. Voldeng that Vermeersch was physically or mentally unable to give a deposition, the Superior Court declined to issue an additional protective order.

Lewin then filed a Petition in Special Action with the Court of Appeals, alleging that "the lower court exceeded his jurisdiction and abused his discretion by ordering the mental and physical examination of a person who [was] not a party to the civil action \* \* \*." This petition acknowledged that in bringing the action for defamation Lewin was "acting on her own behalf, and not as the guardian of the person of Jules L. Vermeersch \* \* \*," and urged that under Ariz.R.Civ.P. 35, Vermeersch (a non-party) could not be subjected to an examination. Lewin's petition, filed November 24, 1970, noted that Rule 35 was amended July 17, 1970, effective November 1, 1970, and now allows physical or mental examinations of parties and of "person[s] in the custody or under the legal control of a party."[1] It con-

---

1. Ariz.R.Civ.P. 35(a):

"*Order for examination.* When the mental or physical condition (including the blood group) of a party, *or of a person in the custody or under the legal con-*

*trol of a party, is in controversy,* the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in

tended, however, that the amendment "refers to a situation where the suit has been brought by a guardian on behalf of the ward"—which was not the situation in Lewin's slander suit.

Lewin's petition also maintained that a medical examination of Vermeersch would be unlawful in view of the physician-patient privileged communications statute, A.R.S. § 12–2235, and stated that the requested medical examination was simply a pretext for the taking of Vermeersch's deposition. Lewin concluded by asking that the Court of Appeals prohibit the defendants from making a mental or physical examination of Vermeersch.

Thereafter, the defendants moved to dismiss Lewin's special action petition, stating that Lewin was attempting to avoid the deposition of her father through the guise of Vermeersch's alleged physical and mental incapacity, and alleging, somewhat ambiguously, that an examination was necessary in order to "test the quality of the unverified and hearsay statement [as to Vermeersch's competence to testify] of a third party physician [Dr. Voldeng] by an independent medical inquiry." The motion to dismiss also challenged Lewin's claim of privilege, stating that Vermeersch's physician-patient privilege, if any had been waived by Lewin when she offered in support of her motion for protective order a letter from Dr. Voldeng attesting to Vermeersch's incapacity, and when she offered Dr. Voldeng as a witness during the hearing on the motion for additional protective order and allowed him to be examined at length by the court and counsel concerning the physical and mental condition of Vermeersch. The defendants noted that at the time of the hearing on the motion for an additional protective order, Lewin had made no objection to permitting Dr. Voldeng to testify. In fact, they argued, Lewin had made no claim of

privilege (on Vermeersch's behalf) until the filing of this special action.

The Court of Appeals refused to accept jurisdiction of the special action. Lewin moved for a rehearing, and claimed that Vermeersch's physician-patient privilege had not been waived merely by allowing Dr. Voldeng to testify on direct examination as to Vermeersch's condition or ailment, because the doctor had not gone into detail or referred to his communications with Vermeersch. Lewin also argued that the Superior Court had no authority under statute or case law to order the physical examination.

The Court of Appeals subsequently denied Lewin's motion for rehearing, and we granted her petition for review.

After studying the record of this case, it is evident that when the trial court entered its order directing a medical examination of Vermeersch, the court had in mind an examination as to the physical and mental competency of Vermeersch to testify at a deposition—not an examination for the purpose of disclosing evidence in the slander case. Not only do each of the parties themselves mention that the medical examination was to be preliminary to Vermeersch's proposed deposition, but the lower court's order denying Lewin's motion for an additional protective order clearly stated that "[t]he Defendant shall cause a report to be made to this Court of the [examination] findings of Dr. Gray and Dr. Coleman *preliminary to the Court's ultimate ruling on the issue of whether Mr. Vermeersch's deposition will be taken.*" (Emphasis added.)

■ Because Rule 35 is intended to apply to medical examinations for discovery purposes, we conclude that Rule 35 does not apply to the instant examination.

■ But despite the limited scope of Rule 35, we feel that the examination ordered by the Superior Court is proper,

---

his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties

and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." (Emphasis added.)

under the circumstances. It is inherent in the judicial function that a trial court take all steps necessary to assure itself not only that a witness' testimony will be accurate and lucid, but also that the act of testifying will not endanger the health of the proposed witness. To achieve this end, Ariz.R.Civ.P. 26(c) allows the issuance of protective orders to insulate witnesses from burden or injustice which may be caused by discovery procedures.[2] But as we have said, the proposed examination of Vermeersch will not be made for discovery purposes. Therefore, Rule 26 is technically not applicable, until and unless the court determines that justice requires the protective order authorized in Rule 26. To determine this, the authority of the Superior Court to order the instant medical examination is derived from the inherent power of the court.

With regard to the inherent judicial power in furtherance of protective orders involved in discovery matters we note State ex rel. St. Louis Public Service Co. v. McMullan, 297 S.W.2d 431, 62 A.L.R.2d 1281 (Mo.1956), in which a husband brought suit for the loss of his wife's services, society, and companionship, arising out of her injuries in an accident. Missouri's version of Rule 35 did not allow medical examinations of non-parties. The Supreme Court of Missouri held that the trial court, on proper motion, had the inherent power in its discretion to order a physical examination of the wife. "The

real point is that the separate claim of the husband arises directly *out of*, and *is based directly on*, the wife's personal injuries. Were it not for those injuries he would have no suit, and upon the extent of those injuries depends, in large measure, the extent of his recovery for a loss of services and society." 297 S.W.2d at 436. As for the enforcement of such an order, the Missouri court stated:

"We may say first that, of course, the court has no means of physically compelling the wife to submit to the examination. Since she is not a party, an order should usually be made directing the husband-plaintiff to produce her; upon a demonstrated failure to comply, we think the court may stay the proceedings, remove the case from the trial docket, or, in an extreme case, strike the pleadings of the plaintiff or dismiss the cause; conceivably, evidence of the injuries might be excluded at trial, a penalty substantially equivalent to a dismissal." 297 S.W.2d at 438.

Contemplating the significance of its "inherent power" reasoning, the court stated that "[w]e are steering here a somewhat uncharted course, but the decision is in accord with what we firmly believe to be the furtherance of justice. That, after all, is the primary object and purpose of our courts." 297 S.W.2d at 438.

Although the Missouri court's holding in *McMullan* refers to a rule similar to our Rule 35, we believe that the same logic

---

2. Ariz.R.Civ.P. 26(c):

"*Protective orders.* Upon motion by a party or by *the person from whom discovery is sought, and for good cause shown*, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the county where the deposition is to be taken may make *any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden* or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by

a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court * * *." (Emphasis added.)

is applicable to the instant case under Rule 26(c). The true basis is the inherent authority of the court to do what is necessary to accomplish the real purpose of the rule.

The federal courts have previously approved discovery orders which were issued conditionally, dependent upon the medical condition of the deponent. See Clark v. Geiger, 31 F.R.D. 268 (D.C.Pa.1962); Zimmerman Co. v. Nat'l Mask & Puppet Co., 13 F.R.D. 172 (D.C.N.Y.1952). Our court has itself recognized the value of pre-discovery protective orders molded to suit various circumstances. *See* State v. Mahoney, 103 Ariz. 308, 441 P.2d 68 (1968).

By way of analogy, we compare the necessary judicial power which we are recognizing herein to the well-established power of a trial judge to personally examine a child witness in order to determine the child's mental capacity and whether the child understands the nature and obligation of an oath. Ariz.R.Civ.P. 43(c); State v. Goldsmith, 104 Ariz. 226, 450 P.2d 684 (1969); Litzkuhn v. Clark, 85 Ariz. 355, 339 P.2d 389 (1959); Udall, Arizona Law of Evidence § 85, at p. 127.

■ We have previously stated that the question of the competency of a witness is a matter resting in the sound discretion of the trial court, and therefore the trial court's ruling will not be disturbed except where there is a clear abuse of discretion. United Producers & Consumers Co-op, Inc. v. O'Malley, 103 Ariz. 26, 436 P.2d 575 (1968). In the instant case, the trial court acted reasonably in attempting to ascertain the physical and mental condition of the proposed witness, in order to determine whether he was entitled to protection as authorized under the rules. Although counsel (and perhaps the court) mistakenly believed the protective order derived from Rule 35(a), the court had ample authority to make a protective order under Rule 26(c). We find no abuse of discretion.

■ We now reach the question of Vermeersch's physician-patient privilege. It is true that a guardian may waive this privilege on behalf of his or her incompetent ward. Lietz v. Primock, 84 Ariz. 273, 327 P.2d 288 (1958). It is our opinion, however, that in the present case there is no privilege to be waived. We reach this conclusion because of the nature of the medical examination ordered.

■ It is well settled that the purpose of the physician-patient privilege is to insure that the patient will receive the best medical treatment by encouraging full and frank disclosure of medical history and symptoms by a patient to his doctor. From the record in the instant case, however, it appears that the Superior Court judge ordered the examination of Vermeersch for the purpose of ascertaining the elderly man's capacity to withstand interrogation at a deposition. A medical examination made for this purpose will not create a privilege as to communications received or knowledge gained by the examining physician, because such an examination is made to aid the court, not to treat the patient. Udall, *supra*, § 93, at p. 145. Knowledge gained through an examination for treatment purposes is privileged; to the extent of the privilege, justice is hampered by exclusion of such evidence. Knowledge gained through a court-ordered examination into a proposed witness' competence, on the other hand, is not privileged; its very purpose is to further justice by enabling the trial judge to ascertain whether undue injury will result by allowing (or forcing) a witness to testify. "For information acquired by a physician to be privileged [under the Arizona statutes] it must have been acquired under circumstances from which it appears that the examination was intended to be privileged." State v. Thomas, 78 Ariz. 52, at 63, 275 P.2d 408 at 416 (1954), overruled on other grounds State v. Pina, 94 Ariz. 243, 383 P.2d 167 (1963); Udall, *supra*, § 93, at p. 145. The examination of Vermeersch ordered by the trial court was ob-

viously not intended to be confidential. Therefore, Vermeersch owns no privilege with respect to the medical examination in question, and consequently we need not discuss the question of waiver.

■ The final contention made by Lewin is that because Dr. Coleman had made a private examination of Vermeersch in connection with a prior lawsuit, the Superior Court should have appointed a "disinterested" doctor to participate in the proposed competency examination. We do not agree. Dr. Coleman has been ordered by the court to consult with the other physicians in determining the mental and physical status of Vermeersch. There is no evidence in the record to indicate that Coleman will perform this task in other than the proper manner, according to the court's instructions. Although the examination ordered therein will not be made pursuant to Rule 35, we refer to Martin v. Superior Court, 104 Ariz. 268, 451 P.2d 597 (1969), a case dealing with a Rule 35 discovery examination, for the proposition that the choice of a physician to make an examination of a party lies within the discretion of the Superior Court. We extend the *Martin* rule to apply to medical examinations of proposed witnesses, ordered pursuant to the inherent power of the court.

Finding no abuse of discretion by the Superior Court in ordering the medical examination of Vermeersch, we agree with the Court of Appeals that relief by special action should be denied.

HAYS, C. J., UDALL, V. C. J., and STRUCKMEYER, J., concur.

CAMERON, J., disqualified himself from any participation in this matter.