# GEORGE HOLT, JR. v. MACK McCANN.
## —429 S.W.(2d) 441.

Eastern Section. March 1, 1968.

Certiorari Denied by Supreme Court May 6, 1968.

Hunter, Smith, Davis, Norris, Waddey & Treadway and John S. McLellan, Jr., Kingsport, for plaintiff in error.

Boyd & Lauderback and Duane S. Snodgrass, Kingsport, for defendant in error.

McAMIS, P.J. Mack McCann brought this action to recover for personal injuries and property damages sustained when his automobile, operated by him, was struck from the rear by an automobile owned and operated by defendant George R. Holt, Jr.

From a verdict and judgment for $35,000.00 defendant has appealed and assigned errors, raising as the principal grounds for reversal the Court's action (1) in permitting the plaintiff to amend the declaration by raising the amount claimed from $30,000.00 to $60,000.00 and denying a continuance because of the amendment (2) permitting plaintiff to read defendant's pretrial discovery deposition without making defendant a witness for plaintiff (3) alleged errors in the charge and (4) excessiveness of the verdict.

The accident occurred at about 7:20 A.M. January 27, 1967. The plaintiff, 53 years of age, was driving eastwardly on State Highway 126 on his way to work on a construction project east of Kingsport where he was employed as a concrete finisher. Defendant had left his place of employment where he had worked during the night and was driving behind plaintiff on his way home. He admits he was sleepy and that he did not see plaintiff and two or three other cars stopped behind a school bus until he was within 40 feet of plaintiff. He applied the brakes but could not stop and crashed into the rear of plaintiff's car knocking it into the west bound lane where it was struck by a west bound car. Defendant stated to the investigating officer that he was traveling up to 50 miles per hour when he came over the crest of a slight rise west of the point of impact.

Plaintiff was taken to the hospital where he was placed under the care of Dr. Banner who ordered X-rays for

possible broken bones. None was found, but the X-rays revealed arthritic changes in the spine and lower back. Plaintiff contends the collision aggravated this latent condition, causing serious and permanent disability. Plaintiff remained under treatment by Dr. Banner until the trial on August 1, 1967. Full reference will be made to Dr. Banner's testimony in considering the question of the amount of the verdict.

■ The action of the Court allowing an amendment to the declaration to increase the amount claimed, as observed by the trial judge, did not change the basis of the suit or, so far as we can see, entail any different or additional preparation for trial. The granting of the amendment was well within the discretion of the judge. Monday v. Millsaps, 37 Tenn.App. 371, 264 S.W.2d 6.

■■ No reason was advanced in support of the motion for a continuance. This was a matter within the discretion of the Court. Stockley v. Cissna, 119 Tenn. 135, 104 S.W. 792. Clearly, there was no abuse of discretion.

■ Defendant's counsel make a most earnest and impressive argument that the court erred in permitting plaintiff to read the discovery deposition of defendant without instructing the jury, as requested by defendant, that in so doing plaintiff had made defendant a witness for plaintiff and so vouched for his credibility.

T.C.A. sec. 24-1207 expressly provides that a party may interrogate his adversary "by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party".

The next Section, T.C.A. sec. 24-1208, controls the use of the deposition at the trial. Subsections (b) and (e)

seem to us controlling here. The first of these sections reads in part:

"(b) The deposition of a party * * * may be used by an adverse party for any purpose."

We quote subsection (e) in full:

"A party shall not be deemed to make a person his own witness for any purpose by taking his deposition. The introduction in evidence of the deposition or any part thereof for any purpose other than that of contradicting or impeaching the deponent makes the deponent the witness of the party introducing the deposition, *but this shall not apply to the use by an adverse party of a deposition as described in subsection (b) of this section.* At the trial or hearing, any party may rebut any relevant evidence contained in a deposition whether introduced by him or any other party." (*Italics* ours)

From this subsection it is clear that, whether or not the witness is a party to the suit, the taking of a discovery deposition does not make the deponent a witness for the party taking the deposition. The introduction of the deposition in evidence controls. If the witness is not a party and his deposition is filed as evidence and not for the purpose of contradicting the witness the deponent becomes a witness for the party introducing the deposition. But to use the language of the Act, "this shall not apply to the use by an adverse party of a deposition as described in subsection (b) of this section." As we have seen subsection (b) expressly authorizes the use of the deposition of an adverse party "for any purpose".

The argument here advanced pretermits the above *italicized* provision of the statute, seemingly designed

to remove this question from all doubt by delineating between depositions of parties to the suit and depositions of non-parties. We must assume the Legislature had good reason for making this distinction. To hold with defendant's counsel would read this express provision out of the Act.

But, it is said, it was error in this case to permit the deposition to be read as a part of plaintiff's proof in chief because the defendant was present in the courtroom and could have been called to the stand. By doing so plaintiff would have been acting independent of the Act and not under it. The parties are nearly always present at the trial and, to sustain this insistence, would, for all practical purposes, nullify the express provision of the Act.

We find no error in the charge. The first complaint is that the Court erred in telling the jury to consider whether defendant knew he was sleepy and, if so, whether he took any steps "to prevent his sleepiness, if he was sleepy, causing him to operate his car in a different manner and way than an ordinary prudent person would operate it. You can consider that. The court is not telling you that any sleepiness on his part had anything to do with this collision. But the question is did he exercise the care and caution under all the facts and circumstances that an ordinary prudent person would exercise under the same circumstances and conditions."

We can not construe this language as a comment on the evidence as insisted. Defendant had admitted he was sleepy as he approached the scene of the collision. The charge only told the jury to consider that as a part of the proof and draw their own conclusion as to whether it,

along with all the facts and circumstances, was a proximate cause of the collision.

█ █ It is next insisted the Court erred in charging the jury on aggravation of an existing disability, as follows:

"In other words, if the affliction that the plaintiff McCann had, if he did have an affliction before the accident and it did not cause him pain and suffering or disability, and after the accident, it did cause pain and suffering and disability, then the accident is the proximate cause of the injury sustained and this plaintiff would be entitled to recover for all ill effects, which naturally and necessarily follow the injury in (which) the condition of health, in which this plaintiff was at the time of the accident, and it is no defense that the injury might have been activated and rendered more difficult to cure by reason of the plaintiff's state of health at that time."

We think this was a correct statement of the controlling principle. Meeks v. Yancey, 43 Tenn.App. 667, 311 S.W.2d 329. We can not agree that the charge overemphasized plaintiff's physical condition.

█ The final question to be considered is the amount of the verdict. As said in Nash-Wilson Funeral Home v. Greer (1966) 57 Tenn.App. 191, 417 S.W.2d 562, 567:

" 'In approaching this question we must bear in mind that the amount of compensation due in personal injury cases cannot be determined with mathematical precision. The amount is primarily for the jury to determine and, it is said next to the jury the most competent person to

pass upon the amount representing fair compensation is the judge who presided at the trial and heard the evidence. * * * The sphere within which the court on appeal may interfere is in cases where the trial judge has failed to keep the jury within reasonable bounds, his concurrence with the jury being entitled to much weight, City of Nashville v. Brown, 25 Tenn.App. 340, 157 S.W.2d 612.' Carman v. Huff, 32 Tenn.App. 687, 227 S.W.2d 780, 786. See also Johnson Freight Lines, Inc. v. Tallent, 53 Tenn.App. 464, 388 S.W.2d 46.

"To determine if the verdict is within reasonable bounds, it is necessary and proper for this Court to take into consideration 'the nature and extent of the injuries, the suffering, expenses, diminution of earning capacity, inflation and high cost of living, age, expectancy of life and amount awarded in other similar cases.' Monday v. Millsaps, 37 Tenn.App. 371, 264 S.W.2d 6, and numerous cases there cited. And in doing so, we must follow the general rule, safeguarding the constitutional right of trial by jury, which requires us to take the strongest legitimate view of all evidence tending to uphold the verdict. See D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S.W.2d 897."

Plaintiff McCann is 53 years of age and is almost totally lacking in education. He is unable to read but can sign his name. Until 12 years before the accident he was employed as a coal miner. During the last 12 years he was a concrete finisher, regularly employed and earning $2.90 per hour. His earnings in 1966 totaled $5,137.05. During January, 1967, he earned $368.50. He had never lost time due to physical disability and was unaware that he had arthritis. At the time of the trial August 1, 1967, he had lost in earnings approximately $3,000.00.

His medical expenses up to that time amounted to $326.32.

According to plaintiff's testimony, he has suffered constantly with his back since the accident, he is nervous and can not sleep at night without medication and has not been able to return to work. He had never had any difficulty with his back before the accident. According to his employer and his fellow employees he was a regular and willing worker. There is no suggestion he is feigning trouble with his back. Dr. Banner found him a co-operative patient and had no doubt of his sincerity in claiming pain in his back and restricted body movements. He claims no impairment in the use of his arms and legs.

Dr. Banner testified the X-rays made of plaintiff's spine and lower back on the day of the accident showed a narrowing of the interspaces indicating probable injury of a violent type, resulting from a tearing of the supporting ligaments in the interspaces, allowing them "to narrow down". With the X-rays before the jury, Dr. Banner testified:

"This little protrusion out here, this is a normal vertebral body, this is indicative of an injury or arthritis, or a type of arthritis that is associated with injury." He had no way to determine whether this condition antedated the accident except the fact that plaintiff had previously engaged in strenuous type work without pain or disability. He thought it "more than likely" plaintiff incurred an aggravation of a preexisting condition of his spine; that he was in fact unable to do the things he would like to be doing and the things the witness had encouraged him to try to do. He thought it more than likely the back condition he now has is something he will have to live with the rest of his life. He doubts he will ever be able to

return to heavy construction work but testified there "are many things potentially he could do". He said the availability of work he can do was beyond the doctor's "realm of knowledge".

On cross examination Dr. Banner testified he examined plaintiff on July 10, 1967, and found he had not improved, had pain in his lower lumbar and cervical region, and that: "He had made an attempt to go back to work under the occupational rehabilitation program, and he was advised to continue his treatment, continue rest." He would recommend plaintiff do some character of work but on re-examination stated he could not do pick and shovel work but it was to be hoped he could find some work he can do.

The testimony of Dr. Ellis, an orthopedic surgeon of Johnson City, is in substantial accord with that of Dr. Banner. He found muscle spasm in the lower back, with limited motion in the lower spine in all directions. The patient could bend forward "about 35 percent of normal" and was unable to straighten his back to a "straight-up" position. Bending his back aggravated the pain in his lower back and left hip. He expected him to have days when he "can get about and probably perform useful work" but he expected him to "be bothered off and on with this from now on".

Dr. Ellis was unable to rate permanent disability since it had been only 4 months since the accident when he examined plaintiff, but, with an "underlying osteo-arthritis" with no trouble before the accident he expected his symptoms to be prolonged.

Dr. Carter, a radiologist and a witness for defendant, testified his X-rays revealed arthritic changes with nar-

rowing of interspaces in plaintiff's spine and lower back which had developed slowly over the years and prior to January, 1967. He admitted an arthritic condition can be aggravated by trauma.

Adhering to the guide lines above noted binding appellate courts in cases of this kind we can not say the amount of the verdict, now concurred in by the trial judge, is so manifestly unjust and unreasonable as to amount to an abuse of discretion and shock the conscience of the court. If, as the jury may well have found and we must assume did find, plaintiff's latent arthritis of the spine and lower back was aggravated and accelerated it is obvious that plaintiff has been grievously injured. His medical expenses, though not large, will be augmented by future drug bills to alleviate the pain and he will continue to suffer pain apparently for the remainder of his life. His future earnings will almost certainly be of an intermittent nature, as he is able to find the type of work he can do. From the medical proof it is certain that he can not do the type of work he has been doing or other work an uneducated man must do to earn an income and that his earnings are bound to be far less than that of a skilled concrete finisher over his life expectancy of at least 21 years.

If, during his expectancy he suffers a loss of only 30%, figured on the basis of his earnings during 1966 of $5,137.00, the loss over this period would amount to $32,363.10, leaving less than $3,000.00 as compensation for medical treatment and drugs and pain and suffering.

Affirmed at the cost of plaintiff in error.

Cooper and Parrott, JJ., concur.