DON GAYLON RICHARDSON, Plaintiff-in-Error, v. FRANCES JOHNSON, Defendant-in-Error.

DON GAYLON RICHARDSON, Plaintiff-in-Error, v. CLAUDE JOHNSON, Defendant-in-Error.—444 S.W.2d 708.

Middle Section. June 27, 1969.

Certiorari Denied by Supreme Court September 15, 1969.

130

Haywood & Whitaker, Lewisburg, for plaintiff in error.

Lloyd & Bussart, Lewisburg, for defendant in error.

TODD, J. These consolidated cases arise out of a collision in which the vehicle of defendant, Don Gaylon Richardson, struck the rear of a vehicle operated by plaintiff, Mrs. Frances Johnson, and owned by plaintiff, Claude Johnson. Plaintiff, Mrs. Frances Johnson, was awarded a verdict and judgment of three thousand dollars for her personal injuries; and her husband, Claude Johnson, was awarded a verdict and judgment of one thousand five hundred dollars for property damages, medical expenses and loss of services.

The defendant has appealed in error and assigned three errors, none of which require a detailed examination of the evidence, except as to extent of injury.

The first assignment of error is:

"1. The Trial Court erred in overruling defendants motion for an independent medical examination in view of the divergence of medical opinion."

The injury occurred on May 21, 1967. Suit was filed on May 13, 1968. The pleadings were at issue on July 27, 1968. The trial was set for October 3, 1968.

On September 6, 1968 the defendant took the discovery deposition of the plaintiffs, and the plaintiffs took the evidentiary deposition of the treating physician, Dr. Harris.

On October 1, 1968 defendant moved for an independent medical examination and for a continuance of trial until after such examination. The motion was overruled and the trial was held on October 3, 1968.

Defendant's only excuse for waiting until two days before trial to request an examination of plaintiff is that

he was misled and surprised. Defendant insists that Dr. Harris had previously reported that he "anticipated complete recovery," but in his deposition of September 6 estimated permanent disability at ten percent. Dr. Harris explained that his change of opinion on permanent disability was based upon persistence of pain beyond anticipated recovery period.

Defendant was permitted to read as testimony a letter from Dr. John Wampler, an orthopedist who had examined Mrs. Johnson at the request of Dr. Harris. Said letter stated in part:

"In summary, I believe that any remaining symptoms are a residual of the muscle and ligament injuries and should improve with appropriate time. * * *

* * * * * *

I would not expect that she would retain any partial permanent impairment after reaching maximum improvement."

Defendant complains that he was not permitted to see Dr. Wampler's letter until October 1, but this does not excuse the delay in application. On September 6, defendant heard Dr. Harris testify that he had revised his opinion of permanent disability. This was almost a month before trial. If defendant was unwilling to accept Dr. Harris's revised opinion, he should have acted promptly to ask for an independent examination. Defendant's later discovery that Dr. Wampler's opinion confirmed Dr. Harris's first prognosis is no ground for a belated physical examination.

Defendant relies upon Williams v. Chattanooga Iron Works, 131 Tenn. 683, 176 S.W. 1031 (1915), yet insists:

"The appellate courts of Tennessee have not spoken in a reported case since 1915. Local rules and practices have dominated this particular question for almost fifty-five (55) years. The explosion of personal injury negligence cases, especially automobile accidents, during this period illuminates this problem and requires a well-considered updating and expansion of the law as outlined in the Williams case. We respectfully submit the Court has a duty to modernize this decision.

In response to the foregoing insistence a survey in depth has been made of the authorities on compulsory examination of a plaintiff.

In Tennessee, the leading case is Williams v. Chattanooga Iron Works, supra. In that case the plaintiff claimed to have been hit in the eye by a hot rivet, by means of which it was claimed that the eye was permanently injured, the other eye had become affected and other parts of the body were injured. On motion, unsupported by affidavit or evidence, the trial judge ordered the plaintiff to appear before a physician selected by the court,

"and there submit to such reasonable physical examination by said physician as may be deemed necessary by him to determine the condition of plaintiff's eyes and vision." 131 Tenn. at p. 688, 176 S.W. at 1032.

Plaintiff declined to submit to the examination, his suit was summarily dismissed, and he appealed. The Court of Civil Appeals reversed and the Supreme Court granted certiorari.

The Supreme Court affirmed the Court of Civil Appeals and reversed the trial court, holding that:

"In the case before us, few, if any, of the safeguards herein indicated as necessary appear to have been employed by the trial judge. We cannot therefore see that he properly exercised his discretion. This must affirmatively appear. It is insisted that specific objections should have been made in the trial court, pointing out any deficiencies in the prerequisites of the order, but we are not of that opinion. We think it should affirmatively appear that the precautions due the plaintiff were exercised by the trial judge before he was compelled to submit to a drastic order for examination on penalty of a dismissal of his suit."

■ Although the order for physical examination was reversed, the Supreme Court did review in great depth the history and background of the subject and did enunciate clear and specific guide-lines for ordering physical examinations of plaintiffs, viz:

1. A trial court in proper circumstances has the discretionary power to order the plaintiff to submit to physical examination to confirm his allegations of injury.

2. The power is applied with great restraint, and with a careful attention to the rights of the plaintiff.

3. Application to the court for such an order can be made only after request and refusal by plaintiff to submit.

4. The application must be made before the trial and so as not to create unnecessary delay.

5. The application must be more than a mere motion and should be supported by affidavit setting forth pertinent facts and reasons.

6. The examination cannot be had merely to obtain cumulative evidence.

7. It must be necessary to justice for the defendant.

8. It should affirmatively appear that the examination can be made without serious pain and without danger to plaintiff.

9. Conclusions of fact on the foregoing should be included in the order.

10. The judgment of the court is an exercise of judicial discretion which is subject to review on appeal.

11. The physician must be selected by the court, not the defendant, and must be competent and disinterested.

12. The expense of examination must be borne by the defendant.

13. The report of the examination must be available for inspection by both parties, but not as evidence except in cross examination of the physician if he testifies.

14. Suitable precautions should secure privacy of person and presence of the personal physician of the patient if desired.

15. Enforcement of an order for examination is by dismissal of action, not by contempt.

16. Refusal by the plaintiff of a request to submit to examination by a court-selected physician may be proven on the trial.

Since the foregoing pronouncement, only one expression of the Appellate Courts of Tennessee has been found, Helfenberger v. Harriman Northeastern R. R. Co.,

156 Tenn. 14, 299 S.W. 793 (1927), wherein the Supreme Court noted that examination provided by the Workmen's Compensation Law is contrary to the common law rule as set out in Williams v. Chattanooga Iron Works.

The absence of further appellate decisions is doubtless a fulfillment of the suggestion in Williams v. Chattanooga Iron Works that, under the practice of proving the refusal of a request to submit to an examination,

"It is more than probable that such requests will generally render unnecessary any contested application to the court." 131 Tenn. at p. 698, 176 S.W. at 1035.

It is insisted by the defendant that in jurisdictions where the judge is disinclined to order examinations there is a corresponding reluctance on the part of plaintiffs to agree to impartial examinations. Defendant's brief does not comment upon the effective device suggested supra, of proving the refusal to the jury. It is not inconceivable that proper emphasis of the refusal of examination might be more impressive than the findings from the examination if conducted.

This Court, of course, has no authority to revise or reverse or "modernize" previous holdings of the Supreme Court. Moreover, no valid occasion is shown for any such "surgery" upon the comprehensive holdings of Williams v. Chattanooga Iron Works, supra. Its pronouncements are as applicable today as in 1915. The just discretion of the trial judges, exercised upon *timely applications* and *proper showing of facts,* and supervised by appellate review, is adequate to protect defendants from fraudulent and excessive personal injury claims.

A review of the authorities outside this state does not suggest any need for revision.

In 25A C.J.S. Damages sec. 174(1), pp. 138, 139, is found the following:

> "While there is some authority to the effect that an examination must be awarded as a matter of right, (citing Bowman v. City of Davenport, 243 Iowa 1135, 53 N.W.2d 249, 63 A.L.R.2d 853) the rule supported by the weight of authority is that, in the absence of statute, the matter rests in the sound discretion of the trial court which is to be exercised in the furtherance of justice, (citing cases from 13 states) and each case is governed largely by its own facts."

The case of Bowman v. City of Davenport, cited above, arose under a special statute applying to municipalities, and was reversed on grounds other than examination of plaintiff, which subject was not involved in the appeal but was mentioned in a single, unsupported, gratuitous sentence of the opinion.

The same C.J.S. article lists opinions from six states wherein the denial of examination was affirmed, and three opinions in which the denial of examination was held to be error. In each of the latter three opinions, it is shown that application was timely made and was supported by a strong showing of the need for impartial examination.

In 23 Am.Jur., Depositions and Discovery, sec. 147, p. 480 is found the following:

> "Thus the right of a court to order the physical examination of the plaintiff in a personal injury action violates no constitutional privilege, but is a *procedural matter* to be passed upon in the *trial court's discretion.*"

In State ex rel. St. Louis Public Service Co. v. Mc-Mullan, Mo., 297 S.W.2d 431, 62 A.L.R.2d 1281 (1957) the Supreme Court of Missouri, sitting en banc, declined to issue mandamus to force a trial judge to order an examination of a wife who was not a party to the suit by her husband arising out of injuries to the wife. The examination had been sought under a statute allowing examination of "parties" which was held to be inapplicable because the wife was not a "party." However the court did not preclude the exercise of the non-statutory authority of the trial court and said:

" There can be no doubt that the Missouri Courts have long recognized, and exercised, the inherent power to require a physical or mental examination of a party to a personal injury suit. Atkinson v. United Railways Co., 286 Mo. 634, 228 S.W. 483; Boggs v. Gosser, Mo. App., 55 S.W.2d 722; Shepard v. Missouri Pacific Railway Co., 85 Mo. 629. This rule was apparently first adopted in the case last cited. There are states which do not recognize this inherent power, but Missouri follows the majority rule. 51 A.L.R. note, p. 184; 108 A.L.R. note, p. 142; 4 A.L.R.2d note p. 378. But it is clear that the power so vested in the court is a discretionary power, and not an absolute right in the applicant, and that the physician or physicians so appointed act as officers of the court, and not as agents of either party. See authorities just cited; and see, generally, 25 C.J.S., Damages, sec. 174; 17 Am.Jur., Discovery, sec. 53, sec. 55. These texts elaborate somewhat upon the power and the theory upon which it is based. Essentially, at least in many cases, the evidence procured by such an examination is the best and only evidence by which a party defendant may protect him-

self against possible imposition and exaggeration, if not actual fraud; and the modern trend is to open the door, if possible, to evidence which will throw light upon the subject under investigation. This power to order an examination is usually placed on 'the same ground as the general power to compel a discovery.' Atkinson v. United Railways Co., 286 Mo. 634, 228 S.W. 483, loc. cit. 485.''

Thus it is, that the law as declared by the Supreme Court in Williams v. Chattanooga Iron Works does not need revising, but proper application by counsel and the trial courts.

In the present case, the application was not timely. Neither the motion nor the supporting affidavit complies with the requirements nos. 4, 5, 7 and 8, supra. There is no finding of fact pursuant to requirement 9, supra, to enable this Court to review the ruling thereon.

This Court is aware of the increasing volume of claims for personal injuries of such nature as to be subject to fraud or exaggeration. It is even insisted from time to time that oversolicitous physicians deliberately or unwittingly cooperate in fraud or exaggeration. Such is especially possible in the case of injuries or disabilities which are subjective in nature, that is, depend largely upon statements of the patient for evaluation. In such instances, an impartial physician may have objective means of testing the subjective claims of the plaintiff; and the trial courts should readily allow the opportunity therefor where the facts justify and no injustice is done the plaintiff.

The first assignment of error is respectfully overruled.

■ The second assignment of error is as follows:

"2. The Trial Court erred in overruling defendant's motion for a continuance to effect such examination, putting defendant to trial without an independent medical examination or medical testimony to substantiate that plaintiff had no permanent disability."

and needs no discussion other than the foregoing. If the trial judge was not in error in refusing to order an independent examination, then he was not in error for refusing a continuance for such purpose. The granting or refusal of continuance is discretionary with the trial judge, and his exercise of discretion will not be disturbed in the absence of a clear showing of abuse of discretion or injustice. Morrow v. Drumwright, 202 Tenn. 307, 304 S.W.2d 313 (1957), Higgins v. Steide, 47 Tenn.App. 42; 335 S.W.2d 533 (1959), Arrants v. Sweetwater Bank, 55 Tenn.App. 631, 404 S.W.2d 253 (1965); Holt v. McCann, 58 Tenn.App. 248, 429 S.W.2d 441 (1968).

The second assignment of error is respectfully overruled.

■ The third assignment of error is as follows:

"3. The Trial Court erred in overruling defendant's motion for a new trial on the ground that the verdict was so excessive as to indicate passion, prejudice and caprice on the part of the jury, in view of the amount of special damages introduced and the medical testimony in the record."

The plaintiff, Mrs. Johnson, was injured in a "rear-end" collision in which the vehicle occupied by her was "knocked off of the road." A picture in the record shows severe damage to the rear of vehicle, repairs to which were shown to cost $230.00.

Mrs. Johnson testified that she was required to be in the hospital for a week and lost two weeks wages, amounting to $100.00. She further testified of her pain and suffering which continued in her head, neck and back on the date of trial over 16 months after the injury. Her physician estimated her permanent partial disability to be ten percent.

Medical Expenses were shown to be:

| | |
|---|---|
| Hospital | $266.85 |
| Dr. Harris | 154.00 |
| Dr. Wampler | 65.00 |
| Drugs | 11.10 |
| | $496.95 |

The verdicts of the jury, as approved by the trial judge, were $3,000.00 in favor of Mrs. Johnson and $1,500.00 in favor of Mr. Johnson. The $100.00 loss of wages is, of course, attributable to Mrs. Johnson and the $230.00 property damage is attributable to Mr. Johnson, the owner of the vehicle. The record is not specific as to which of the plaintiffs paid the medical expenses, however Mrs. Johnson's declaration does not expressly allege medical expenses and Mr. Johnson's declaration does. It is therefore reasonable to attribute Mr. Johnson's $1,500.00 verdict to the property damages, medical expenses and loss of services. It is likewise reasonable to attribute Mrs. Johnson's $3,000.00 verdict to loss of wages, disability and pain and suffering.

On this basis, this Court is unable to say that the verdicts of the jury were so excessive as to require reversal or revision. The amount of compensation due in a personal injury case cannot be determined with mathematical

precision, and the amount is primarily for the jury to determine; but, next to the jury, the most competent person to pass upon this question is the trial judge. Holt v. McCann, 58 Tenn.App. 248, 429 S.W.2d 441 (1968) and cases cited therein.

The third assignment of error is respectfully overruled.

Each assignment of error having been carefully considered and overruled, the judgments of the trial court are affirmed with costs.

Affirmed.

Shriver, P. J. (M.S.), and Puryear, J., concur.