**Royce BISWELL, Plaintiff and Appellant,**

v.

**Diane G. DUNCAN, Defendant and Respondent.**

No. 860124–CA.

Court of Appeals of Utah.

Aug. 18, 1987.

81

David M. Jorgensen, Robert J. DeBry, G. Steven Sullivan, Robert J. DeBry & Associates, Salt Lake City, for plaintiff and appellant.

R. Scott Williams, Harold L. Petersen, Strong & Hanni, Salt Lake City, for defendant and respondent.

Before BILLINGS, BENCH and ORME, JJ.

BILLINGS, Judge:

Appellant Royce Biswell ("Biswell") appeals from the district court's judgment granting respondent Diane Duncan's ("Duncan's") motion for partial summary judgment dismissing Biswell's punitive damage claim against Duncan, an intoxicated driver, and the court's refusal to give Biswell's proposed jury instruction regarding the extent of Duncan's liability for aggravating Biswell's pre-existing back injury. We reverse and remand.

## FACTUAL BACKGROUND

Biswell sustained injuries when her car was hit by Duncan, a drunken driver, at the intersection of 5065 West and North Temple in Salt Lake City. Subsequent to the accident, Duncan was arrested and convicted for driving under the influence of alco-

hol, having a blood alcohol content of .10 percent in violation of Utah Code Ann. § 41-6-44 (1987).

Prior to the accident, Biswell suffered from degenerative changes in her spine and upper back. Biswell testified that this condition and other ailments had been "taken care of" prior to the accident and that she suffered no symptoms. Biswell claims that it was only *after* the accident that she experienced the pain and discomfort she currently experiences in her lower back. Biswell contends that the accident aggravated or "lit up" this latent condition causing permanent partial disability.

Biswell brought a civil action against Duncan seeking compensatory and punitive damages. Duncan filed a motion for partial summary judgment claiming that punitive damages were not recoverable in the context of drunk driving as a matter of law. Although Duncan's motion was captioned one for "partial summary judgment," both parties and the trial judge, in his memorandum decision, treated it as a motion for partial judgment on the pleadings. No factual development of Duncan's prior driving record, her behavior and attitude while drinking, or her conduct at the scene of the accident was presented to the court.[1] The parties focused exclusively on whether the standard for an award of punitive damages in Utah requires a finding of "actual malice" (intent to injure) or "legal malice" (reckless disregard of the rights of others).

The district court removed the issue of punitive damages from jury consideration ruling that punitive damages in Utah can be awarded only if "actual malice" or "malice in fact" is established. The issue of compensatory damages was tried to the jury. The trial court refused to give Biswell's proposed jury instruction on aggravation of a pre-existing condition. The jury awarded special damages of $436.63 and general damages of $500.00. This appeal ensued.

Three issues are presented on appeal. First, was the trial judge correct in ruling that punitive damages are not recoverable against this drunken driver because "actual malice" or "factual malice" was not pled? Second, does the imposition of punitive damages in a civil suit against a drunken driver contravene Utah's constitutional prohibition against double jeopardy? Third, did the trial court correctly instruct the jury as to the extent of a tortfeasor's liability for "lighting up" a pre-existing latent condition?

## PUNITIVE DAMAGES

Biswell argues that the trial court erred in dismissing her claim for punitive damages, as a matter of law, ruling that she had not pled, and conceded she could not prove, "actual malice" or intent to injure. The issue of whether punitive damages can be imposed against drunken drivers in a civil action is one of first impression in Utah.

### A.

To resolve the issue of whether punitive damages are recoverable in this State against intoxicated drivers, an examination of the relevant law in other jurisdictions is instructive. To date, twenty-two out of twenty-seven jurisdictions to consider the question have held that punitive damages may be assessed against the drunken driver in a civil proceeding: Alabama (*Fritz v. Salva*, 406 So.2d 884 (Ala.1981)); Arizona (*Smith v. Chapman*, 115 Ariz. 211, 564 P.2d 900, 904 (1977)) (citing *Ross v. Clark*, 35 Ariz. 60, 274 P. 639 (1929)); Arkansas (*Miller v. Blanton*, 213 Ark. 246, 210 S.W.2d 293, 3 A.L.R.2d 203 (1948)); California (*Taylor v. Super. Ct. of Los Angeles County*, 24 Cal.3d 890, 598 P.2d 853, 157 Cal.Rptr. 693 (1979)); Connecticut, (*Infeld v. Sullivan*, 151 Conn. 506, 199 A.2d 693 (1964)); Delaware (*Walczak v. Healy*, 280 A.2d 728 (Del.1971)); Florida (*Ingram v.*

---

1. The only fact presented to the trial court was that Duncan was arrested and convicted for driving under the influence of alcohol. This was uncontested in the pleadings. The record on appeal indicates that Duncan had her license revoked for a prior DUI conviction. This fact, however, was not argued by counsel nor considered by the court on Duncan's partial summary judgment motion.

*Pettit,* 340 So.2d 922 (Fla.1976)); Georgia (*Chitwood v. Stoner,* 60 Ga.App. 599, 4 S.E.2d 605 (1939)); Illinois (*Madison v. Wigal,* 18 Ill.App.2d 564, 153 N.E.2d 90 (1958)); Iowa (*Nichols v. Hocke,* 297 N.W.2d 205 (Iowa 1980)) (citing *Sebastian v. Wood,* 246 Iowa 94, 66 N.W.2d 841 (1954)); Kentucky (*Wiggington's Adm'r v. Rickert,* 186 Ky. 650, 217 S.W. 933 (1920)); Minnesota (*Hawkinson v. Geyer,* 352 N.W.2d 784 (Minn.1984)); Mississippi (*Southland Broadcasting Co. v. Tracy,* 210 Miss. 836, 50 So.2d 572 (1951)); Missouri (*Smith v. Sayles,* 637 S.W.2d 714 (Mo.App.1982)) (remanded punitive damages issue to provide plaintiff an opportunity to develop and present evidence on intoxication); Montana (*Allers v. Willis,* 197 Mont. 499, 643 P.2d 592 (1982)); New Mexico (*Svejcara v. Whitman,* 82 N.M. 739, 487 P.2d 167 (N.M.App.1971)); New York (*Colligan v. Fera,* 76 Misc.2d 22, 349 N.Y.S.2d 306 (N.Y.Civ.Ct.1973)); North Carolina (*Huff v. Chrismon,* 68 N.C.App. 525, 315 S.E.2d 711 (1984)); Oregon (*Harrell v. Ames,* 265 Or. 183, 508 P.2d 211 (1973)); Pennsylvania (*Focht v. Rabada,* 217 Pa.Super. 35, 268 A.2d 157 (1970)); *but see Harvey v. Hassinger,* 315 Pa.Super. 97, 461 A.2d 814, 816 (1983) (noting that *Focht* was decided prior to the effective date of the Pennsylvania No-Fault Motor Vehicle Insurance Act, which became effective July 19, 1975); Tennessee (*Pratt v. Duck,* 28 Tenn.App. 502, 191 S.W.2d 562 (1945)); Texas (*Crider v. Appelt,* 696 S.W.2d 55 (Tex.Civ.App.1985)).

The jurisdictions that have held that punitive damages are not recoverable against

the drunken driver are generally governed by a standard of punitive damages requiring "actual malice" or "malice in fact." *See* Comment, *Punitive Damages and the Drunken Driver,* 8 Pepperdine L.Rev. 117, 138 (1980).[2] These courts generally require "that state of mind under which a person's conduct is characterized by hatred or ill will, a spirit of revenge, retaliation, or a determination to vent his feelings upon other persons" before awarding punitive damages. *Detling v. Chockley,* 70 Ohio St.2d 134, 436 N.E.2d 208, 210 (1982) (quoting *Columbus Finance v. Howard,* 42 Ohio St.2d 178, 184, 327 N.E.2d 654, 658 (1975)).

**B.**

Because the standard for an award of punitive damages in Utah is determinative of our holding, we review the history of punitive damages in Utah. Prior to 1979, punitive damages could be imposed only after a finding of "actual malice" or "malice in fact." *See, e.g., Kesler v. Rogers,* 542 P.2d 354 (Utah 1975); *Palombi v. D & C Builders,* 22 Utah 2d 297, 452 P.2d 325 (Utah 1969); *Powers v. Taylor,* 14 Utah 2d 152, 379 P.2d 380 (1963); *Smoot v. Lund,* 13 Utah 2d 168, 369 P.2d 933 (1962); *Holland v. Moreton,* 10 Utah 2d 390, 353 P.2d 989 (1960); *Evans v. Gaisford,* 122 Utah 156, 247 P.2d 431 (1952); *Murphy v. Booth,* 36 Utah 285, 103 P. 768 (1909). In these cases, "actual malice" or "malice in fact" was defined as willful and malicious misconduct and described as an act done with evil intent and with the purpose of injuring. *See Kesler,* 542 P.2d at 359; *see also*

---

**2.** These jurisdictions include: Kansas (*Gesslein v. Britton,* 175 Kan. 661, 266 P.2d 263 (1954)) (gross and wanton negligence must be alleged); Ohio (*Detling v. Chockley,* 70 Ohio St.2d 134, 436 N.E.2d 208 (Ohio 1982)) (Punitive damages are not recoverable based on evidence of intoxication alone. Actual malice is required which means defendant's actions must have been intentional and deliberate or have the character of outrage frequently associated with crime.); Oklahoma (*Ruther v. Tyra,* 207 Okla. 112, 247 P.2d 964 (1952)) (act must be accompanied with evil intent or the result of such gross negligence, such disregard of another's rights, as is deemed the equivalent of such intent); and Virginia (*Baker v. Marcus,* 201 Va. 905, 114 S.E.2d 617 (1960)) (court refused to award punitive dam-

ages against the intoxicated driver holding that punitive damages are allowed only where conduct is done with malice, recklessness, or negligence that evinces a *conscious* disregard of the rights of others). Although Maryland has addressed the issue of punitive damages in the drunk driving context, the standard for an award of punitive damages currently used by the Maryland courts in drunk driving cases is ambiguous. *See Giddings v. Zellan,* 160 F.2d 585 (D.C.Cir.1947) (applying Maryland law), *cert. denied,* 332 U.S. 759, 68 S.Ct. 61, 92 L.Ed. 345 (1947) (actual malice required before punitive damages can be assessed against the drunken driver); *but see Davis v. Gordon,* 183 Md. 129, 36 A.2d 699 (1944); *Smith v. Gray Concrete Co. Inc.,* 267 Md. 149, 297 A.2d 721 (1972).

*McFarland v. Skaggs Companies, Inc.*, 678 P.2d 298, 303 n. 11 (Utah 1984).

In 1979, the Utah Supreme Court had an opportunity to articulate the proper standard to be applied in assessing punitive damages in false imprisonment cases. *Terry v. Zions Coop. Mercantile Inst.*, 605 P.2d 314 (Utah 1979). The supreme court held that in false imprisonment cases the defendant need not manifest "actual malice" or "malice in fact." Rather, malice could be implied from conduct.

> This presumed malice or malice in law does not consist of personal hate or ill will of one person towards another but rather refers to that state of mind which is reckless of law and of the legal rights of the citizen in a person's conduct toward that citizen. Therefore, in false imprisonment cases the defendant need not act with actual ill will or hatred toward the person being confined. In such cases malice in law will be implied from unjustifiable conduct....

*Id.* at 327. This "reckless disregard" standard was extended to tort cases other than false imprisonment cases in *Branch v. Western Petroleum, Inc.*, 657 P.2d 267, 277 (Utah 1982) (improper disposal of waste water). The supreme court, citing *Terry*, held that punitive damages may be awarded when one acts with reckless indifference and disregard of the law and his fellow citizens. *Id.* The "actual malice" *or* "reckless disregard" standard was reaffirmed in *Behrens v. Raleigh Hills Hosp., Inc.*, 675 P.2d 1179 (Utah 1983):

> A defendant's conduct must be malicious *or* in reckless disregard for the rights of others, although actual intent to cause injury is not necessary.

*Id.* at 1186 (emphasis added).

In 1984 the supreme court reconsidered its position in *Terry* and adopted a different standard for the imposition of punitive damages in false imprisonment cases:

> [W]e adopt as the appropriate standard for determining the availability of a punitive damage award in an action for false imprisonment that of "malice in fact" or "actual malice."

*McFarland*, 678 P.2d at 304. However, the language and reasoning of *McFarland* is limited to false imprisonment cases. This interpretation is buttressed by the fact that the supreme court has since cited the "actual malice" *or* "legal malice" standard with approval in cases—other than false imprisonment cases—subsequent to *McFarland: Synergetics v. Marathon Ranching Co., Ltd.*, 701 P.2d 1106, 1112–13 (Utah 1985) ("Punitive damages, among other things, punish conduct which manifests a knowing or reckless indifference toward, and disregard of, the rights of others."); *Atkin, Wright & Miles v. The Mountain States Tel. & Tel.*, 709 P.2d 330, 337 (Utah 1985) ("Before punitive damages can be awarded, the plaintiff must prove conduct that is willful and malicious or that manifests a knowing and reckless indifference and disregard towards the rights of others.").

■ In light of the aforementioned authority, we conclude that the standard for an award of punitive damages in cases other than false imprisonment cases in Utah is "actual malice/malice in fact" *or* "legal malice," i.e., conduct that manifests a reckless disregard or indifference to the rights and safety of others.

States with a standard for the imposition of punitive damages similar to Utah have consistently permitted punitive damages to be assessed against the drunken driver in the appropriate circumstances. *See, e.g., Smith v. Chapman*, 115 Ariz. 211, 564 P.2d 900, 903–04 (1977); *Hawkinson v. Geyer*, 352 N.W.2d 784, 788 (Minn.App.1984); *Allers v. Willis*, 197 Mont. 499, 643 P.2d 592, 596 (1982); *Svejcara v. Whitman*, 82 N.M. 739, 487 P.2d 167, 169 (N.M.App.1971); *Huff v. Chrismon*, 68 N.C.App. 525, 315 S.E.2d 711, 715 (1984); *Harrell v. Ames*, 265 Or. 183, 508 P.2d 211, 215 (1973).

### C.

The imposition of punitive damages against the drunken driver under appropriate circumstances is harmonious with Utah's public policy, evidenced by recent legislation. As stated by the Court of Appeals of North Carolina in *Huff v. Chris-*

*mon,* 68 N.C.App. 525, 315 S.E.2d 711 (1984):

There appears to be a growing trend in this State to maximize the punishment and deterrence which impaired drivers are subjected to. This trend is seen in the recent enactment of the "Safe Roads Act" with its stiff penalties for impaired drivers. This State's growing concern and outrage stemming from injuries and deaths caused by impaired drivers is further seen in our courts' recognition of a common law dram shop liability.

. . . . .

We believe that punitive damages, when used in conjunction with the sanctions of the "Safe Roads Act," are consistent with the trend to maximize punishment and deterrence of impaired drivers and would have a far reaching impact.

*Id.* at 715 (citations omitted).

Cognizant of the grave problems drunk driving poses, the Utah Legislature has enacted one of the strongest impaired driving laws in the country. *See* Utah Code Ann. §§ 41–6–44 —41–6–44.20 (1987). In addition, the 1981 Legislature passed the "Dram Shop Act" which imposes liability for those who provide intoxicating liquors which result in injuries to third persons. Utah Code Ann. § 32A–14–1 (1986). These statutes represent a legislative determination that public safety is gravely endangered when a person operates a motor vehicle after consuming alcoholic beverages.

Assessing punitive damages against drunken drivers is also consistent with the historical objectives of punitive damages. The most commonly cited objectives for punitive damages are: the punishment of the defendant, the deterrence of the defendant from further offense, the deterrence of others from similar conduct, and the vindication of society. *See Behrens v. Raleigh Hills Hosp., Inc.,* 675 P.2d at 1186; *see also Peterson v. Super. Ct. of Ventura County,* 31 Cal.3d 147, 642 P.2d 1305, 181 Cal.Rptr. 784 (1982); *Sebastian v. Wood,* 246 Iowa 94, 66 N.W.2d 841 (1954); *Danculovich v. Brown,* 593 P.2d 187 (Wyo.1979).

The possibility of an award of punitive damages may induce the victim, not otherwise willing to proceed because of the trouble and expense, to take action against the intoxicated driver. *See Colligan v. Fera,* 76 Misc.2d 22, 349 N.Y.S.2d 306, 308 (N.Y. Civ.Ct.1973). Since punitive damages are usually paid by the defendant personally and not by insurance,[3] the possible imposition of punitive damages may well be a more effective deterrent than any possible criminal penalty which may be imposed. *See Colligan,* 76 Misc.2d 22, 349 N.Y.S.2d 306, 310 (N.Y.Civ.Ct.1973).

Legal scholars and commentators also advocate the imposition of punitive damages against drunken drivers. *See,* Comment, *Punitive Damages and the Drunken Driver,* 8 Pepperdine L.Rev. 117 (1980); Note, *Torts-Damages-The Drinking Driver and Punitive Damages,* 7 Wake Forest L.Rev. 528 (1971); Comment, *Damages-Intoxicated Driver-Punitive Damages,* 46 Iowa L.Rev. 645 (1961); Comment, *Punitive Damages and their Possible Application in Automobile Accident Litigation,* 46 Va.L.Rev. 1036 (1960).

▮▮▮▮ After careful examination of the authorities on this question, we hold that punitive damages are recoverable against a drunken driver in an automobile personal injury case where it can be established (1) that the defendant motorist acted with actual malice or a reckless disregard of the rights and safety of others, and (2) that his drunken driving was a contributing cause of the accident. We believe that one who drives a car after voluntarily drinking to excess, with its great potential for causing serious injury, could be found, under proper circumstances, to demonstrate a "reckless indifference to the rights of others" sufficient to allow the issue of punitive damages to be considered by the trier of fact. *See Taylor v. Super. Ct. of Los Angeles County,* 24 Cal.3d 890, 598 P.2d 854, 157 Cal.Rptr. 693 (1979). We do not, however, hold that the *mere* finding that a driver who was involved in an accident was convicted for driving under the influence of alcohol in violation of Utah Code Ann.

**3.** *See, e.g., Northwestern Nat. Cas. Co. v. McNul-*   *ty,* 307 F.2d 432 (5th Cir.1962).

§ 41–6–44 (1987) would allow the issue of punitive damages to be submitted to the jury.[4]

Our holding that punitive damages may be assessed against the drunken driver under some circumstances is supported by persuasive statistical data linking drunken drivers with a high incidence of traffic accidents and traffic fatalities. The 1983 Final Report of the Presidential Commission on Drunk Driving states:

At least 50 percent of all highway deaths involve the irresponsible use of alcohol. Over the past ten years, 250,000 Americans have tragically lost their lives in alcohol-related crashes. Conservative estimates place the annual economic loss at $21 billion, while others run as high as $24 billion. There is, of course, no way to measure the loss of human lives.

In single vehicle fatal crashes, for which fault can be more easily ascertained than in multiple vehicle crashes, upwards of 65 percent of those drivers who died were legally under the influence, i.e., their alcohol level was above 0.10. Furthermore, more than half of the drunk drivers who were involved in fatal crashes had blood alcohol concentrations (BACs) twice that of the legal limit. The average BAC of these drunk drivers was 0.20.

. . . . .

This becomes even more significant in light of the fact that only one in five hundred (1/500) to one in two thousand (1/2000) drivers on the road with a BAC greater than 0.10 are arrested for driving under the influence. The low likelihood of arrest, and a lenient judicial attitude fostered by a misperception of the seriousness of the offense, are important factors in perpetuating the nation's drunk driving problem.

1983 Final Report of the Presidential Commission on Drunk Driving at 1.

Because the trial court ruled, as a matter of law, that punitive damages cannot be imposed against drunken drivers absent a finding of actual malice, there was no occasion for development of the factual record in the proceedings below. The trial court did not focus on whether additional facts regarding Duncan's conduct could be discovered and presented which would have allowed a jury to conclude (1) that Duncan's conduct demonstrated a "reckless indifference to the rights and safety of others," and (2) that her intoxication was a cause of the accident. We, therefore, reverse and remand for further proceedings.

### D.

Because we remand for further proceedings, we attempt to provide some guidance to the trial court.[5] *See Utah Farm Production Credit Ass'n v. Watts*, 737 P.2d 154, 158 (Utah 1987); *see also* R.Utah Ct. App. 30(a). Case law overwhelmingly concludes that whether punitive damages are awarded is generally a question of fact within the sound discretion and province of the jury. *Smith v. Chapman*, 115 Ariz. 211, 564 P.2d 900, 905 (1977); *Mince v. Butters*, 616 P.2d 127, 129 (Colo.1980); *Infeld v. Sullivan*, 151 Conn. 506, 199 A.2d 693, 695 (1964); *Sebastian v. Wood*, 246 Iowa 94, 66 N.W.2d 841, 845 (1954); *Moore v. Bothe*, 479 S.W.2d 634, 635 (Ky.Ct.App. 1972); *Powers v. Taylor*, 14 Utah 2d 152, 379 P.2d 380, 382 (1963); *Wilson v. Oldroyd*, 1 Utah 2d 362, 267 P.2d 759, 766 (1954).

---

4. [T]he violation of a statute is not sufficient *per se* to allow an award, whether or not the statute carries a criminal penalty, since the violation of a statute by itself does not necessarily indicate sufficient [actual malice or reckless indifference towards the rights of others]. However, violation of a statute may be considered as evidence of [actual malice or reckless indifference towards the rights and safety of others].
Comment, *Punitive Damages and their Possible Application in Automobile Accident Litigation,* 46 Va.L.Rev. 1036, 1047 (1960). Furthermore, causation must also be established.

5. We resist the temptation to provide further guidance by suggesting specific kinds of behavior which, if present, should point to or away from an award of punitive damages in an accident caused by a driver who is intoxicated. We believe it is best to move cautiously and permit application of the legal standards set forth herein on a case-by-case basis.

■ A jury should be instructed that punitive damages can be imposed only after establishing that the drunken driving was a cause of the injury and that the defendant motorist acted with "actual malice" or "legal malice," i.e., a reckless indifference to the rights and safety of others. In addition, it must be remembered that "[t]he trier of fact is not required to award punitive damages in a case in which they are permissible, and it is error for a trial judge to instruct the jury that punitive damages must be given." Restatement (Second) of Torts § 908 comment d (1979); *accord,* C. McCormick, *Handbook on the Law of Damages,* § 84 (1935).

■ Moreover, if reasonable minds could not differ in concluding that Duncan's intoxication was not a cause of the accident and subsequent injuries, or that Duncan's conduct did not meet the standard of "legal malice," or a "reckless indifference towards the right and safety of others," the court should eliminate the issue of punitive damages as a matter of law.[6] *See Jackson v. Dabney,* 645 P.2d 613, 615 (Utah 1982).

### DOUBLE JEOPARDY

Duncan claims that the imposition of punitive damages in this civil suit against her, where a criminal penalty was assessed for the same conduct, contravenes the prohibition against double jeopardy. Utah Const. art. I, § 12. Duncan contends that she will be punished twice for the same wrong.

An overwhelming majority of jurisdictions that have addressed this issue have ruled that the imposition of punitive damages does not contravene double jeopardy proscriptions. *See, e.g., Security Aluminum Window Mfg. Corp. v. Lehman Associates, Inc.,* 108 N.J.Super. 137, 260 A.2d 248 (1970); *Svejcara v. Whitman,* 82 N.M. 739, 487 P.2d 167 (1971); *Roshak v.*

*Leathers,* 277 Or. 207, 560 P.2d 275 (1977); *see also* Oleck, *Damages to Persons and Property* (rev. ed. 1961), § 270; Restatement (Second) Torts § 908 comment a (1979); Note, *Torts—Damages—The Drinking Driver and Punitive Damages,* 7 Wake Forest L.Rev. 528, 531 (1971).

Several Utah cases have awarded punitive damages in cases where the same conduct *could* be punished criminally. *E.g., Elkington v. Foust,* 618 P.2d 37 (Utah 1980); *Holdaway v. Hall,* 29 Utah 2d 77, 505 P.2d 295 (1973); *Evans v. Gaisford,* 122 Utah 156, 247 P.2d 431 (1952).

Other jurisdictions in drunken driving cases have specifically rejected the double jeopardy argument. *Peterson v. Super. Ct. of Ventura County,* 31 Cal.3d 147, 642 P.2d 1305, 181 Cal.Rptr. 784 (1982); *Miller v. Blanton,* 213 Ark. 246, 210 S.W.2d 293 (1948); *Svejcara v. Whitman,* 82 N.M. 739, 487 P.2d 167 (1971); *Pratt v. Duck,* 28 Tenn.App. 502, 191 S.W.2d 562 (1945).[7] We agree with the majority.

■ We are persuaded that the constitutional immunity from double jeopardy is limited to criminal proceedings. Comment, *Punitive Damages and the Drunken Driver,* 8 Pepperdine L.Rev. 117, 130 (1980). A punitive damage award is civil in nature. Thus, although the award of punitive damages is a type of penalty imposed to deter wrongful conduct, "[t]he authorization to award exemplary damages ... does not convert a civil action into a criminal action insofar as it affects constitutional protections in criminal proceedings." *Peterson v. Super. Ct. of Ventura County,* 31 Cal.3d 147, 162, 642 P.2d 1305, 1313, 181 Cal.Rptr. 784, 792 (1982) (quoting *People v. Super. Ct.,* 12 Cal.3d 421, 433, 525 P.2d 716, 115 Cal.Rptr. 812 (1974).

---

**6.** Relying principally on an exchange between the court and Duncan's counsel during argument for modification of the court's order dismissing the punitive damages claim, Biswell suggests the court would have ruled the same way even if it viewed the case from the perspective of the "reckless disregard" standard. Since the trial court's focus was so clearly on which standard applied, we are not persuaded by this argument. Moreover, the factual record was

not sufficiently developed to have permitted an informed decision that Duncan did not act in "reckless disregard" as a matter of law.

**7.** Only a small minority, including Indiana and Nebraska, prohibit punitive damages where a tort is also a crime. *Roshak v. Leathers,* 277 Or. 207, 560 P.2d 275, 277–78 (1977).

■ We find that the imposition of punitive damages against a drunken driver in a civil action, who may also be punished criminally for the same conduct, does not violate the double jeopardy prohibition in Utah's Constitution.

## "LIGHTING UP" PRE–EXISTING CONDITION

On appeal, Biswell further contends that the trial court committed reversible error by incorrectly instructing the jury on the extent of Duncan's liability for aggravating or "lighting up" Biswell's pre-existing asymptomatic back condition.

■ Failure to give requested jury instructions constitutes reversible error only if their omission tends to mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advises the jury on the law. *In re Estate of Kesler,* 702 P.2d 86, 96–97 (Utah 1985). A party is entitled to have his theory submitted to the jury but it is not error when requested instructions are fully covered in the other instructions given. *Watters v. Querry,* 626 P.2d 455, 458–59 (Utah 1981). Instructions should be read in their entire context and given meaning in accordance with the ordinary and usual import of the language as it would be understood by lay jurors. *Brunson v. Strong,* 17 Utah 2d 364, 412 P.2d 451, 452–53 (1966).

Although Biswell suffered from degenerative changes in her spine prior to the accident, at trial she claimed that her prior conditions and ailments had been resolved and that she suffered no symptoms before the accident. Biswell alleged that it was only after the accident that she experienced the pain she currently endures in her lower back. This was her theory of the case and she had a right to have it fairly presented to the jury.

■ The rule is well settled that when a defendant's negligence aggravates or lights up a latent, dormant, or asymptomatic condition, or one to which the injured person is predisposed, the defendant is liable to the injured person for the full amount of damages which ensue, notwithstanding such diseased or weakened condition. In other words, when a latent condition itself does not cause pain, but that condition plus an injury brings on pain by aggravating the pre-existing condition, then the injury, not the dormant condition, is the proximate cause of the pain and disability. A plaintiff, therefore, is entitled to recover all damages which actually and necessarily follow the injury. *See Owen v. Dix,* 210 Ark. 562, 196 S.W.2d 913, 915 (1946); *C.F. Hamblen, Inc. v. Owens,* 127 Fla. 91, 172 So. 694, 696 (1937); *Jones v. City of Caldwell,* 20 Idaho 5, 116 P. 110, 113 (1911); *Becker v. D & E Distributing Co.,* 247 N.W.2d 727, 731 (Iowa 1976); *Holt v. McCann,* 58 Tenn.App. 248, 429 S.W.2d 441, 445 (1968); *Brunson v. Strong,* 17 Utah 2d 364, 412 P.2d 451, 453 (1966); *Bennett v. Messick,* 76 Wash.2d 474, 457 P.2d 609, 612 (1969).

Having ascertained the extent of a tortfeasor's liability for aggravating a dormant condition, we must determine whether the trial court properly instructed the jury on this issue. Instruction No. 17 given by the trial court states:

You are instructed that the damages that may be assessed in this case should not be reduced simply because the plaintiff may suffer from a pre-existing or abnormal condition. If you find that the plaintiff suffers from an abnormal or pre-existing condition which has not been proximately caused by the accident, even though it may invite your sympathy, you may not assess any damage against the defendant for that condition. *However, if the accident has been the proximate cause of aggravating such pre-existing condition, that should be considered by you in determining general damages.* (Emphasis added.)

We are persuaded that the instruction given by the trial court was not a clear statement of the law under Biswell's theory of the case.[8] On remand the court

8. The instruction proffered by Biswell containing her theory of the case states:

Plaintiff, Royce Biswell, may not recover damages for any pre-existing condition or dis-

should give an instruction which clearly expresses the concept that if Duncan's negligence aggravated or lit up Biswell's dormant asymptomatic condition, then Biswell is *entitled* to recover all the damages which follow.

Reversed and remanded for further proceedings consistent with this opinion.

BENCH and ORME, JJ., concur.

ability she may have had which did not result from any fault of the defendant, but she is entitled to recover damages for any injury she suffered, including any aggravation or lighting up of such a pre-existing condition or disability, which was proximately caused by defendant's negligence.